CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

**IN THE UNITED STATES DISCTRICT COURT**

SEP 1 0 2021

**FOR THE WESTERN DISTRICT OF VIRGINIA** JULIA C. DUDLEY, CLERK
BY: _asloobe_
DEPUTY CLERK

**ROANOKE DIVSION**

|  |  |
|---|---|
|  | ) |
|  | ) NO. _7:21CV00471_ |
|  | ) |
| **Commonwealth of Virginia** | ) |
|  | ) **AMENDED** |
| **Petitioner ,** | ) **RESPONDENT'S NOTICE OF** |
|  | ) **REMOVAL NO: 7:21-cv-00448** |
|  | ) **PURSUANT** |
|  | ) **28 U.S.C. §1331, §1441, & §1443** |
| **V.** | ) **CASE NO. CL20-827** |
|  | ) **ALLEGHANY COUNTY CIRCUIT** |
|  | ) **COURT** |
|  | ) |
| **DONNIE T.A.M. KERN** | ) |
|  | ) |
| **Respondent, Pro Se.** | ) |

## AMENDED

## RESPONDENT'S NOTICE OF REMOVAL OF CIVIL ACTION

## PURSUANT 28 U.S.C. §1331, §1441, & §1443

**PLEASE TAKE NOTICE** that the Respondent Donnie T.A.M. Kern hereby

amends it's previously filed Notice of Removal pursuant 28 U.S.C. §1446(b)(3).

This amendment is for the sole purpose of amending Donnie T.A.M. Kern's Notice

of Removal filed on August 24 2021. Amending the Notice of Removal is being

done in good faith, in the best interest of justice, and to eliminate further delay which could occur by Donnie T.A.M. Kern appealing the order to remand of the Notice of Removal to the United States appellate court pursuant 28 U.S.C. §1447(d) as the Notice of Removal was filed pursuant 28 U.S.C. §1443 permitting appeal to the United States appellate court. Amending the Notice of Removal will aim to remove any confusion and will explicitly show that the Notice of Removal is proper under 28 U.S.C. §1331, §1441, and §1443 all of which are considered federal subject matter jurisdictional elements for removal into the United States District Court. The Amended Notice of Removal is amended and filed timely under 28 U.S.C. §1446(b)(3) as it is filed within the 30-day statue of limitations.

**COMES NOW** the Respondent Donnie T.A.M. Kern asking the court for liberal construe in interpreting this potentially "inartful pleading" (Boag v. MacDougall, 454 U.S. 364, 365 (1982)), via Pro Se, in seeking judicial asylum, without adequate and desperate need of counsel submits this pleading in justifiable self-defense in response to the villainous, retaliatory provocation by the Commonwealth of Virginia, Petitioner on behalf of the Alleghany County Board of Supervisors in the filing of a motion on August 13 2021 in the Alleghany County Circuit Court to suspend Donnie T.A.M. Kern from the Alleghany County School Board under Virginia Code §24.2-236 pending the hearing on the petition for

removal filled by Alleghany County Board of Supervisors under Virginia Code §24.2-234 on December 2 2020.

Whereas members of the Alleghany County Board of Supervisors under the "color of law" on December 2 2020 in retaliation and in the commission of perjury filed a petition under Virginia Code §24.2-234 under the penalty of perjury mandating Donnie T.A.M. Kern to show cause why he should not be removed from the Alleghany County School Board.

Whereas the Alleghany County Board of Supervisors took action in filing the petition seeking the removal of Donnie T.A.M. Kern under the "color of law" having been provoked because Donnie T.A.M. Kern in exercising his unalienable constitutional rights under the following laws Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment I, U.S. Constitution Amendment VIII, Constitution Amendment XIV, 42 U.S.C. §1983 & §1985.

Whereas on August 10 2021 Donnie T.A.M. Kern filed a fifty-two-page motion for continuance and on August 12 2021 a hearing on the motion was conducted approximately around 2:00PM and in response to the motion for continuance the Commonwealth of Virginia via **Patrick Jensen, Commonwealth Attorney** opined:

"I guess the position of the Commonwealth is, when we file that motion, we

probably won't object to a continuance if the court hears that motion to

suspend Mr. Kern **and he is in fact suspended from office**"

and via **Jim Guynn, Special Counsel** opined:

"**You do not get to seek a continuance two weeks before trial and keep

your position** until a jury tells you to go back or not."

and **Judge Ed Stein** concluding:

"I am going to continue your trial and I will hear the Commonwealth's

motion they say they are going to file…on the 25th of August 9:00AM…**if

you're going to have counsel by then that is fine, if you don't have

counsel, we will probably do it anyway**"

Whereas the Commonwealth of Virginia under the "color of law" on August 13

2021 filed a motion under Virginia Code §24.2-236 to suspend Donnie T.A.M.

Kern from the Alleghany County School Board in retaliation of Donnie T.A.M.

Kern exercising his constitutional right of governmental redress and speech to

preserve his constitutional right of due process by filing a motion for continuance

on August 10 2021 therefore the Commonwealth of Virginia having also violated

Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964,

U.S. Constitution Amendment I, U.S. Constitution Amendment V,  U.S.

Constitution Amendment VIII, Constitution Amendment XIV, 42 U.S.C. §1983 & §1985 as the motion to suspend was not done in isolation of the petition that was filed in retaliation by the Alleghany County Board of Supervisors.

Therefore, the Commonwealth of Virginia in filing its motion on August 13 2021 to suspend Donnie T.A.M. Kern from his position on the Alleghany County School Board until his trial by jury dehiscent the opportunity for Donnie T.A.M. Kern to motion for removal of civil case CL20-827 from the Alleghany County Circuit Court.

Henceforth Donnie T.A.M. Kern humbly, mercifully, and humanely request that the federal court remove in its entirety case CL20-827 from the Alleghany County Circuit Court in Alleghany County, Virginia along with all covenants including but not limited to a jury trial, written response to show cause why Donnie T.A.M. Kern should not be removed from the Alleghany County School Board, and any relief that maybe available, with prayers and in the best interest of justice so that Donnie T.A.M. Kern can be vindicated and the petition filed by the Alleghany County Board of Supervisors will be tossed out on to the court house steps with extreme prejudice to serve as a reminder to all citizens that the court house is used for justice and not irreparable retaliatory revenge because there is no place in society for misplaced civility especially in the judicial system.

## I. JURSIDICITON

Opined in Gully v. First National Bank in Meridian, 299 U.S. 109, 112 (1936);

> a right or immunity created by the Constitution or laws of the United States [constitutes] an element, and an essential one, **of the plaintiff's cause of action**

in which a defendant can properly remove a court case when removal is dependent on such matters under 28 U.S.C. §1441.

Gully v. First National Bank in Meridian (1936) explicitly preempts the requirement that in order for a defendant to remove a case into federal jurisdiction, the removal is based on the **plaintiff's cause of action** which should not be replaced with the statutory code allowing the plaintiff the action to file the complaint.

The Alleghany Count Board of Supervisors filed a petition under Virginia Code §24.2-234; however, Virginia Code §24.2-234 is not the **cause of action,** or in more simple explanation: **was not the reason** for the Alleghany County Board of Supervisors to file the petition in the Alleghany County Circuit Court. In order to determine the Petitioner's **cause of action** in filing the petition under Virginia Code §24.2-234 the court and the Respondent must look at the face of the Petition to determine the **cause of action**. This is supported in the United States 4th Circuit

in Verizon, Md., Inc. v. Global Naps, Inc., 377 F.3d 355, 363 (4th Cir. 2004) when the court required a review of the **"face of the plaintiff's properly pleaded complaint"**.

In reviewing the face of the plaintiff's properly pleaded complaint, it should look to the United States Supreme Court, Chief Justice Marshall who opined:

> ...The judicial department to receive jurisdiction to the full extent of the constitution, laws, and treaties of the United States, when **any question respecting them shall assume such a form that the judicial power is capable of acting on it**. That power is capable of acting only when the **subject is submitted to it by a party who asserts his rights in the form prescribed by law**. It then becomes a case, and the constitution declares that the judicial power shall extend to all **cases arising under** the constitution, laws, and treaties of the United States'
>
> When a **question to which the judicial power of the Union is extended by the constitution forms an ingredient of the original cause**, it is in the power of congress to give the circuit court's jurisdiction **of that cause**, although other questions of fact or law may be involved in it.
>
> The right of the plaintiff to sue cannot depend on the defense which the defendant may choose to set up. His **right to sue is anterior to that defense,**

**and must depend on the state of things when the action is brought. The questions which the case involves, then, must determine its character, whether those questions be made in the cause or not** (Osborn v. Bank of the United States, 22 U.S. (9 Wheat.) 738 (1824).

The plaintiffs pleaded complaint must contain allegations against the defendant where the defendant's actions having arisen from the Constitution, laws, or treaties of the United States therefore becoming the cause of action that the plaintiff relied on to bring suite. It was further opined in Metcalf v. Watertown, 128 U.S. 586 (1888):

Where, however, the original jurisdiction of a circuit court of the United States is invoked upon the sole ground that determination of the suit depends upon some question of a federal nature, **it must appear, at the outset, from the declaration or the bill of the party suing,** that the suit is of that character; in other words, it must appear, in that class of cases...

Removing a case into federal jurisdiction does not rest with evaluation of state statutory code. Federal jurisdiction is determined in evaluating what did the defendant do to cause the plaintiff to bring action against the defendant and are the **causes of action** present in the plaintiff's complaint. Did the actions of the defendant arise from the Constitution, laws, treaties, that the plaintiff relied upon

in-order for the plaintiff to take action and file the complaint? This was once again affirmed by the United States Supreme Court in the case Tennessee v. Union and Planters's Bank, 152 U.S. 454 (1894).

> Even under the act of 1875, the jurisdiction of the circuit court of the United States could not be sustained over a suit originally brought in that court, upon the ground that the suit was one arising under the constitution, laws, or treaties of the United States, **unless that appeared in the plaintiff's statement of his own claim**.

The "ingredients" that provoked the Alleghany County Board of Supervisors to file the petition under §24.2-234 seeking Donnie T.A.M. Kern's removal will be explicitly identified to show that the Notice of Removal contains federal subject matter jurisdiction under 28 U.S.C. §1331, §1441, and §1443. These "ingredients" that constitute **causes of action** did in fact arise under the Constitution, laws, or treaties of the United States will also be located in the **VII CLAIMS** section of the Notice of Removal

28 U.S.C. §1331 states:

> the district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.

28 U.S.C. §1441(a) states:

Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

28 U.S.C. §1443 states:

Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

(1)

Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

(2)

For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Roanoke Division

CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 2 8 2007

BY: JOHN F. CORCORAN, CLERK
DEPUTY CLERK

JEANNE Q. JACKSON,              )
                               )
            Plaintiff           )
                               )
v.                              )      CIVIL ACTION NO.
                               )
ALLEGHANY COUNTY,               )          7:07-CV-00417
                               )
BOARD OF SUPERVISORS OF         )
ALLEGHANY COUNTY,               )
                               )
PROFESSIONAL NETWORK SERVICES   )
                               )
and DAVID BAILEY,               )
                               )
            Defendants.         )

## NOTICE OF REMOVAL

Jackson v. Alleghany County Board of Supervisors et al., (4th Cir. 2007), was a

complaint filed by Jeanne Jackson (herein after Jackson), an employee of the

Alleghany County Board of Supervisors. Jackson tried to resolve a targeted hostile

work environment with members of the Board of Supervisors. An incident of

hostility alleged by Jackson included being retaliated against for trying to correct a

situation in which Jackson discovered an administrator in possession of

pornographic material. Jackson filed a complaint with the Alleghany County

Circuit Court. On August 8 2007 a Notice of Removal was filed by Alleghany

County Board of Supervisors to remove the complaint into federal jurisdiction. The

Alleghany County Board of Supervisors argued that Jackson's complaint when

filed against the Alleghany County Board of Supervisors contained "ingredients"

or **causes of action** performed by the Alleghany County Board of Supervisors

which arose under constitutional law. These **causes of actions** were indicated by Jackson on the face of the complaint filed in the Alleghany County Circuit Court. An example used in the Notice of Removal which was filed by the Alleghany County Board of Supervisors was that Jackson quoted "redress" in the complaint. "Redress" is a constitutionally protected activity under U.S. Constitution. Amend. I. Jackson having indicated that she was filing a complaint against the Alleghany County Board of Supervisors due to the Alleghany County Board of Supervisors violating Jackson's right of "redress" gave the complaint federal subject matter jurisdiction allowing for the complaint to be removed. The 4th Circuit granted removal to the Alleghany County Board of Supervisors and denied the motion to remand which was later filed by Jackson.

The Alleghany County Board of Supervisors in its petition filed on December 2 2020 alleges that Donnie T.A.M. Kern should be removed from office because, including but not limited to Donnie T.A.M. Kern held a "belief", and even made "complaints" at Alleghany County Public Schools. Holding a "belief" is a constitutional protection under U.S. Constitution. Amend. I. Making "complaints" at Alleghany County Public Schools is also constitutional protection under U.S. Constitution. Amend. I.

When looking at the complaint filed by a plaintiff, you look at the cause of actions which triggered the plaintiff to file the complaint. The **actions of the defendant**

**and that these actions are also described in the plaintiff's complaint is evaluated**. The Alleghany County Board of Supervisors are seeking to remove Donnie T.A.M. Kern because Donnie T.A.M. Kern exercised actions protected under Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment I, U.S. Constitution Amendment V, U.S. Constitution Amendment VIII, U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985 which has extremely offended the Alleghany County Board of Supervisors causing the Alleghany County Board of Supervisors to seeking Donnie T.A.M. Kern removal.

The actions of Donnie T.A.M. Kern in exercising his constitutional protections are the cause of action that the Alleghany County Board of Supervisors allege are valid reasons for filing the petition under Virginia Code §24.2-233(1) seeking Donnie T.A.M. Kern's removal which states:

> For neglect of duty, misuse of office, or incompetence in the performance of duties when that neglect of duty, misuse of office, or incompetence in the performance of duties has a material adverse effect upon the conduct of the office;

A federal question that can be asked is: does Donnie T.A.M. Kern exercising constitutional rights of U.S. Constitution. Amend. I so Donnie T.A.M. Kern can help disabled students receive a Free and Appropriate Education constitute neglect

of duty, misuse of office, or incompetence which has a material adverse effect upon the conduct of the office as alleged by the Alleghany County Board of Supervisors?

Virginia Code §24.2-233(1) as stated is unconstitutional, and void under the void for vagueness doctrine, as this petition filed under Virginia Code §24.2-234 is considered quasi civil-criminal.

Session v. Dimaya, 138 S. Ct. 1204-2018 the United States Supreme Court opined that "aggravated felonies" was unconstitutionally vague. Donnie T.A.M. Kern's case is also quasi civil-criminal which in this case has the elements of "prohibitory and stigmatizing effect". The subjective elements under Virginia Code §24.2-233(1) are profoundly vague and broad which leads to the violation of equal protection of the laws under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985.

Cox v. Louisiana, 379 U.S. 536(1965) the U.S. Supreme court opined:

> There is an **equally plain requirement for laws and regulations to be drawn so as to give citizens fair warning as to what is illegal; for regulation of conduct that involves freedom of speech and assembly not to be so broad in scope as to stifle First Amendment freedoms, which "need breathing space to survive"**, NAACP v. Button, 371 U.S. 415, 371 U.S. 433; for appropriate limitations on the discretion of public officials

where speech and assembly are intertwined with regulated conduct, and for all such laws and regulations to be applied with an equal hand. We believe that all of these requirements can be met in ordered society dedicated to liberty. We reaffirm our conviction that "freedom and viable government are...indivisible concepts" Gibson v. Florida Legislative Comm., 375 U.S. 539, 372 U.S. 546

The **Breach the Peace statue is unconstitutionally vague in its overly broad scope**, for Louisiana has defined "breach of peace" as to "agitate, to arouse from state of repose, to molest, to interrupt, to hinder, to disquiet"; yet one of the very functions of free speech is to invite dispute. Timeriniello v. Chicago Page 379 U.S. 537

The lodging of such broad discretion in public officials' sanctions suppression of free expression and facilitates denial of equal protection. Pp. 379 U. S. 557-558.

equivalent of such a system by selective enforcement of an extremely broad prohibitory statute.

It is, of course, undisputed that appropriate, limited discretion, under properly drawn statutes or ordinances, concerning the time, place, duration,

or manner of use of the streets for public assemblies **may be vested in administrative officials, provided that such limited discretion is**

**"exercised with 'uniformity of method of treatment upon the facts of each application, free from improper or inappropriate considerations and from unfair discrimination' . . . [and with] a 'systematic, consistent and just order of treatment,** with reference to the convenience of public use of the highways. . . .'"

*Cox v. New Hampshire, supra,* at 312 U. S. 576. *See Poulos v. New Hampshire, supra.*

But here it is clear that the practice in Baton Rouge **allowing unfettered discretion in local officials in the regulation of the use of the streets for peaceful parades and meetings is an unwarranted abridgment of appellant's freedom of speech and assembly secured to him by the First Amendment,** as applied to the States by the Fourteenth Amendment. It follows, therefore, that appellant's conviction for violating the statute as so applied and enforced must be reversed.

The Alleghany County Board of Supervisors never came to Donnie T.A.M. Kern and said:

**"Mr. Kern, if you file a complaint in-order-to help disabled children, we will file a resolution against you and we will petition for your removal".**

This did not happen. Virginia Code §24.2-233(1) is unconstitutional due to it being overly broad and vague in its application which has denied Donnie T.A.M. Kern equal protection under the laws under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985. Therefore 28 U.S.C. §1443 allows Donnie T.A.M. Kern the ability to remove this case into federal jurisdiction.

The Alleghany County Board of Supervisors have systemically ignored the neglect of duty, misuse of office, or incompetence in the performance of duties by other school board members which have contributed to the material adverse effect upon the conduct of the office they have served.

The Alleghany County Board of Supervisors have not asked Jacob Wright, Chairman of the Alleghany County School Board to resign even though he along with other members have contributed to a discriminatory workplace causing an employee to file a complaint with the EEOC. This employee after receiving a right-to-sue letter has filed a complaint with the United States District Court.

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division**

███████████████

      **Plaintiff,**

v.

                          **Case No:** 7:20CV00668

**SCHOOL BOARD OF ALLEGHANY
COUNTY, d/b/a "ALLEGHANY COUNTY
PUBLIC SCHOOLS"**            **JURY TRIAL DEMAND**

**Serve:**

      **Jacob L. Wright, Chairman**

      **School Board of Alleghany County
199 Central Circle
Low Moor, Virginia 24457**

As it was explained by attorneys for the Alleghany County School Board, **it is a fact that the Alleghany County School Board did hire an individual over this employee who was of the opposite sex, who was younger, and was not qualified for the position. This is discrimination.** This situation has caused the school division to expense funds in legal costs. The Alleghany County Board of Supervisors were made aware of this situation on October 6 2020. Jacob Wright is not being asked to be removed or petitioned to be removed nor any other members of the school board. Donnie T.A.M. Kern has been adamant in trying to prevent this from happening. This supports that Donnie T.A.M. Kern is not receiving equal protection under the law a violation of U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985.

Therefore Notice of Removal is filed pursuant 28 U.S.C. §1331, §1441, and §1443 in the United States District Court for the Western District of Virginia, Roanoke Division based on federal subject matter jurisdiction due to the intentional and malicious systemic violations under the "color of law" by the Alleghany County Board of Supervisors due to a petition having been filed on December 2 2020 seeking Donnie T.A.M. Kern's removal from office which the cause of action is associated with Donnie T.A.M. Kern having exercised and having received constitutional protections under Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment I, U.S. Constitution Amendment V, U.S. Constitution Amendment VIII, U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985 in the commission of perjury in filing a petition under Virginia Code §24.2-234 and through its execution by the Commonwealth of Virginia and subsequent filing of a motion on August 13 2021 under §24.2-236.

The Ninth Circuit opined in Harris v. Provident Life and Accident Ins. Co., 26 F.3d 930, 932 (9th Cir.1994) (quoting Gould v. Mut. Life Ins. Co. of New York, 790 F.2d 769, 771 (9th Cir.1986)):

> The burden of establishing federal jurisdiction falls on the party invoking removal

Henceforth jurisdiction is proper under 28 U.S.C. §1331, §1441, and §1443 due to federal subject matter jurisdiction. The Respondent petitions the federal court for removal of case CL20-827 from the Alleghany County Circuit Court in Alleghany County Virginia.

## II. VENUE

Venue rest in the Roanoke Division of the United States District Court for the Western District of Virginia and is proper pursuant to 28 U.S.C. §1391 and §1446 therefore 28 U.S.C. §1446 states:

> A defendant or defendants desiring to remove any civil action from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

Respondent was unaware on December 2 2020 that the petition filed under Virginia Code §24.2-234 having subject matter jurisdiction could be removed to the U.S. District Court. Respondent was at the mercy of counsel at the time. Respondent asks the court to acknowledge this extenuating circumstance. The

Fourth Circuit opined in McKinney v Bd of Trustees of Md. Comm. Coll., 955 F.2d 924, 926 & n.3 (4th Cir. 1992):

> ...each defendant has 30 days in which to remove the case after it is served

On August 13 2021 the Commonwealth of Virginia filled a motion under Virginia Code §24.2-236 placing the Respondent in a renewed position to seek judicial asylum by removing case CL20-827 from the Alleghany County Circuit Court and placing it into the U.S. District Court pursuant to 28 U.S.C. §1446(b)(3). The Respondent is the only Respondent and on August 13 2021 was served a complaint under Virginia §24.2-236 allowing for removal. Notice of Removal is timely filed. The Amended Notice of Removal is also timely filed under 28 U.S.C. 1446(b)(3) having been filed on September 10 2021.

## III. PARTIES

**Respondent** is Donnie T.A.M. Kern.

Donnie T.A.M. Kern is a natural born citizen of the United States of America, a citizen of the Commonwealth of Virginia, a citizen of the legendary magisterial West District of the Town of Clifton Forge, a former and current volunteer for youth organizations including but not limited to the Boy Scouts of America, Troop 2 (arguably the oldest Boy Scout Troop in the Commonwealth of Virginia), the Young Men's Christian Association (YMCA), Mountainview Elementary PTO, a business owner, a father of two minor children having the same initials; CBK, a husband to a loving and patient wife, a civil rights activist, an affluent and influential political figure in the Alleghany Highlands who has loyally served the public since he was twenty-two years of age, and having begun his political career as an intern for US Congressman Rick Boucher before running for his first public office the Virginia House of Delegates. Donnie T.A.M. Kern was appointed to the Alleghany County School Board having sworn the oath of office on June 13 2018 and beginning his term on July 1 2018.

**** OATH ****

I, DONNIE T.A.M. KERN, do solemnly swear or affirm that I will support the Constitution of the United States and the Constitution of the Commonwealth of Virginia and that I will faithfully and impartially discharge all the duties incumbent upon me as a member of the Alleghany County School Board (Clifton Forge West District), for a term beginning July 1, 2018 and ending June 30, 2022, according to the best of my ability, (so help me God).

DONNIE T.A.M. KERN

Donnie T.A.M. Kern is self-employed and owns Quill Accounting and Tax LLC, is also employed as an accountant for a Fortune 500 company with a mission decreeing "above all else we are committed to the care and improvement of human life". Donnie T.A.M. Kern completed a Bachelors of Business Administration with a 3.88 grade point average from Radford University, was inducted into Beta Gamma Sigma and Phi Kappa Phi honor society, published in the National Dean's List and a Dean's List Scholar, and was nominated by Radford University for the Rhodes Scholar program to study at Oxford, England.

Donnie T.A.M. Kern subsequently graduated from Liberty University with a Master in Accounting with a 4.0 grade point average earning the highest distinction award and was inducted into Delta Mu Dela honor society. Donnie T.A.M. Kern earned the Enrolled Agent credential from the United States Department of the Treasury prior to completing his master degree providing him unlimited representation before the Internal Revenue Service. Donnie T.A.M. Kern is also a governor appointed, commissioned Notary. Donnie T.A.M. Kern has over two decades of youth development experience in which he has been trained in ASSIST (suicide prevention), a facilitator of Stewards of Children (child sexual abuse prevention), Adult and Youth Mental First Aid, is a certified Virginia Adult Career Coach, and previously held certifications from the American Red Cross to instruct First Aid, Wilderness First Aid, Water Safety, and Lifeguarding.

Most recently in June of 2021 Donnie T.A.M. Kern collected over 200 signatures from registered voters in the Clifton Forge West District for ballot qualification in the upcoming November 2 2021 general election as a candidate for the Alleghany County Board of Supervisors.

Address:

115 Church Street

Clifton Forge, Virginia 24422

Phone: 540-958-4958

Email: quilltaxation@gmail.com



**Donnie T.A.M. Kern**

**Petitioner** is the Commonwealth of Virginia. Alleghany County Circuit Court Judge Ed Stein appointed Mary Pettitt Montgomery County Commonwealth Attorney to execute the petition on behalf of the Alleghany County Board of Supervisors due to the Alleghany County Commonwealth Attorney Ann Gardner recusing herself due to a conflict of interest. Marry Pettitt, Montgomery County Commonwealth Attorney appointed her Chief Deputy Patrick Jensen to lead the petition efforts on behalf of the Commonwealth of Virginia.

Patrick Jensen, Chief Deputy Commonwealth's Attorney

County of Montgomery.

Address: 55 E. Main Street., Ste 2B

Christiansburg, Virginia 24073.

Email: jensenpr@montgomerycountyva.gov

Phone: 540-382-5705



**Patrick Jensen**

Patrick Jensen having the need for additional lawyering skills as indicated on

March 11 2021 was provided Jim Guynn Special Counsel who was appointed by

Honorable Judge Ed Stein, Alleghany County Circuit Court

Jim H. Guynn, Jr., Special Counsel, Commonwealth

Counsel for Alleghany County Board of Supervisors

Guynn, Waddell, Carroll & Lockaby, P.C.

Address: 415 S. College Avenue, Salem,

Virginia 24153.

Email: jimg@guynnwaddell.com

Phone: 540-387-2320



**Jim Guynn**

All parties are citizens of Virginia and are citizens of the Roanoke Division, for the Western District of Virginia, United States District Court.

## IV. Exhibit A-Enclosures

True and correct copies of all processes, pleadings and orders in chronological order served in this action that were made known to the respondent are attached hereto as Exhibit "A", as required 28 U.S.C. §1446(a). Exhibit "A" is in part printed or contained with the accompanied red/black jump drive.

## V. EVIDENCE

No evidence needed to be included with a Notice of Removal as opined in Dart

Cherokee Basin Operating Co., LLC, et al v. Owens 574 U.S. 81 (2015).

## VI. BACKGROUND

Amy Trail, a famed child advocate who files systemic complaints against school

divisions that discriminates against vulnerable children specific to those with

special needs and the Respondent became close friends.  At or around October

2018 the Respondent began discussing with Amy Trail the idea of filing a systemic

complaint against Alleghany County Public Schools, hereinafter ACPS.

> **Donnie Kern**
> Amy, just want to one say Thank
> You for your support for kids and
> families. What you are doing is
> amazing and will pay big dividends.
> I had a question. What is the
> easiest way or process to have
> the State do an investigation in a
> public school to determine if the
> school is complying with IDEA or
> 504 laws?
>
> 9:12 PM



> **Amy Trail**
> Well the easiest way to bring them
> in for an investigation is to find
> evidence on a couple of children
> and file a systemic complaint - like
> I have done in Roanoke City and in
> Franklin County.
>
> 9:13 PM

Amy Trail via a secret Facebook group called "FAPE in the Alleghany Highlands,

Bath Co, and Covington" confirmed that Alleghany County Public Schools had

systemic issues relating to the discrimination of the Alleghany Highlands most

vulnerable children; a segment of the population the Respondent cares deeply about.



**(Photo Caption-Picture of student files that would be reviewed by FACES Warriors, including Amy Trail on November 17 2018)**



 Amy Trail ● ALL OF THE ABOVE are your districts exact systemic issues and then some

Like · Reply · 2w

 Amy Trail ● NOT ONE IEP I reviewed had received Comprehensive Evaluations - ZERO really FBA's and BIP's, reevaluations did not do Speech and OT evaluations, and only ONE IEP had OT when 13 required it

Like · Reply · 2w

**(Photo Caption-Facebook post the day before the IEP/Review-November 17 2018 stating without having conducted the review yet that systemic issues existed within Alleghany County Public Schools)**

 **Amy Trail** shared a post.
⚙ Admin · November 18 at 1:51 PM

 **FACES**
November 18 at 1:34 PM

We spent the weekend in Alleghany County, VA where we reviewed about 21 IEP's/504's, gave recommendations, letters for requests for evaluations, services, reviews of FERPA, IEE's in 12 hours!

It was amazing to meet some wonderful people who came to get some insight for their children but also just a little support from other parents who want to help! Parents helping Parents is how we all make effective change by using the knowledge we have collected ourselves to help our children throughout the years and now taking that knowledge and giving it directly to others who need to hear it to help their children.

Yes, there were tears shed;
Yes there were things we uncovered which were horribly wrong;
But today we all know that no matter what all of these families eyes have been opened to many things which they can achieve with just a little help from their 'friends'.

And to all of you parents who came to get some insight – let me tell you, if no one else has, YOU are all doing an amazing job and as you go on this quest now for FAPE after you ensure CHILD FIND is performed appropriately, I say to you ------ YOU can do it! (and if you have any struggles along the way - you know how to get a hold of us!)

Sincerely,
The FACES Tribe


**(Photo Caption-Facebook post the day after the IEP/Review-November 17 2018, stating "Yes there were tears shed, Yes there were things we uncovered which were horribly wrong" within Alleghany County Public Schools)**

 **Amy Trail**
O Admin · October 24

There is a Disability list on Alleghany County's website that shows that in the district a child must have ID to be considered MD which is FALSE! So, I emailed Hank about it and here is the email chain! ASK QUESTIONS when something does not look right!

Hank,
I have received a lot of conflicting information about the MD category under IDEA - I have some districts telling parents that ID is required for a MD label and others saying no ID is not required. Which is it?

Amy

Amy,

There is nothing in the regulations which require that a student be identified as having ID in order to be eligible under an MD category. Thus, thus the determination of eligibility falls to the eligibility team. The regulations use ID in the definition of MD but only as an "example." Eligibility for MD requires that a determination has been made that the students "separate" disabilities are so severe and impacting on the student that they can not be addressed under a single disability category.

Hank

Henry J. Millward, Jr.
Director
Office of Specialized Education Facilities and Family Engagement (SEFFE)
James Monroe Building
101 N. 14th Street
Richmond, Virginia 23219

**(Photo Caption-Facebook post Amy Trail discussing issues involving policies within Alleghany County Public Schools)**



**Amy Trail** shared a link.
Admin · October 27

This is when called in the VDOE for Franklin County! Alleghany Next???

ROANOKE.COM
**State to investigate special education complaints in Franklin County**
A group of parents dissatisfied with the school division's response reached out to state Sen. Bill Stanley, who evoked a rare systemic review.

**(Photo Caption-Facebook post Amy Trail sharing the Franklin County investigation and indicating Alleghany County Public Schools could be next)**



**Amy Trail** shared a link.
Admin · October 21

http://www.alleghany.k12.va.us/cms/one.aspx...

There is so much wrong here -- I need to speak to someone that is familiar with the way that they do these "Child Development Screenings' and I know what the little one is your district are not receiving FAPE and why their numbers are dirt low on as they are not doing comprehensive evaluations and they are leaving off social, emotional, and behavioral in these evaluations which is where MANY of the children's deficits are.

Shell... See More

ALLEGHANY.K12.VA.US
**Child Development Screening 2018 Flyer - Alleghany County Public Schools**
Are you concerned about your child's development? Does your child move, speak or act differently than other children the same age? The purpose of the screening is to identify children who have a developmental delay and...

**(Photo Caption-Facebook post Amy Trail "There is so much wrong here" indicating Child Development Screenings are not being done correctly within Alleghany County Public Schools)**

 **Mindy Hemp Gardzinski** shared a link.
🕐 Admin · October 15

https://www.wdbj7.com/.../Roanoke-City-Schools–392484641.html

When you read this article you will see our own Amy Trail filed this complaint.



WDBJ7.COM
ⓘ About this website

**Report: Roanoke City Schools "non-compliant" in special education procedures**

**(Photo Caption-Facebook post by another administrator, "Our own Amy Trail filed this complaint")**

 **Amy Trail** shared a post.
🕐 Admin · November 18 at 6:56 PM

I need all of you to STOP signing IEP's without a completely correct PWN -- every PWN I looked at over the last week from your area did not contain all of the information that is REQUIRED! PWN's are JUST as POWERFUL as your IEP's as they are the road map to help you basically by understanding why they said NO to something you have requested and why the child does not need that intervention or accommodation, etc.

YOU must start pushing your districts to do these things right! Not only for YOUR child but for all of the other children too

Let the EDUCATION begin with you and me!

**(Photo Caption-Facebook post by Amy Trail "Every Prior Written Notice (PWC) I looked at over the last week from your area did not contain all the information that is required")**



**Amy Trail**

✪ Admin · November 19 at 6:02 AM

While reviewing IEP's I found out that a few of the parents can not read and one even stated that they read on about a 2nd grade level. So - I am hugely concerned that these people have been so taken advantage of because of THEIR disabilities which makes me sick!

I need to know of any resources in your area where they could learn to read but also, I need to find a way for them to stop being taken advantage of by this district!

I am considering a letter to the school board on this one asking ONE of them to read everything to these parents!

**(Photo Caption-Facebook post by Amy Trail "I am hugely concerned that these people have been so taken advantage of because of their disabilities which makes me sick")**

 **Amy Trail**
⟳ Admin · November 15 at 5:05 PM

And the FIRST letter DROPPED today!
Happy Advocating everyone and it is independence day for one little man in your county!

November 15, 2018

Mrs. April Easton, Principal
Mountain View Elementary
Alleghany County Public Schools
100 Gleason Drive
Covington, VA 24426

Re: ██████████

Dear Mrs. Easton,

My son, ████ is a child who I suspect to have a disability, which has not been identified by the district. ██ is a student, who continues to struggle with many interfering behaviors which impact ██ ability to learn and access ██ education even with strategies in place, which to date have not been successful. ██ symptoms include, but are not limited to: behaviors; social deficits; emotional regulation issues; trouble understanding language; volume control of language; ██ is destructive; sleep issues; hyperactive; sensory overload and I suspect ██ could have Autism; ADHD; and/or Speech and Language disorder.

██ teacher has reported that ██ struggles in the classroom and ██ exhibits the following behaviors: self-injurious behaviors; attempted to and has injured peers; ██ is impulsive in the classroom, which includes interrupting, and disruptive behaviors during instruction and across all areas, especially in the lunch room & hallways. Additionally, I now understand that a child's educational needs can never be appropriately met, until these tests are performed for all of ██ needs to be identified.

This year █████ has been made to walk laps at recess due to ████ 'interrupting behaviors', which is removing ████ from natural opportunities for socialization with ████ peers and is a noted weakness of ████ skill set. ████ teacher has reported multiple crying and screaming incidents, including one where ████ was inconsolable to the point ████ was taken out in the hallway, because she could not teach over ████ crying, and was unable to redirect him. Also, ████ has been in several silent lunches, due to ████ behavior and the teacher stated that the interventions our school was using, led to an increase in unwanted behaviors, but I have not received the data to support this. Additionally, ████ continues to have issues on ████ bus, and is currently in danger of being 'kicked off', due to ████ problematic behaviors from home to school.

Please accept this as my request for ████ to have full comprehensive testing, as outlined in the VDOE's guidance document, for the school districts to show all of ████ present levels of performance including functional developmental, and academic information. We also need to develop a BIP (Behavior Intervention Plan) to decrease the intensity, frequency, or duration of the behaviors, for ████ to be successful in ████ educational environment, with the supports and services ████ needs.

An educational assessment to determine ████ level of academic achievement, and the nature of any problems related to learning

A psychological assessment to determine strengths and weaknesses in areas that may include: social, motor, emotional, behavior, adaptive and intellectual ability

A sociocultural assessment to obtain social, developmental, adaptive and health history information and any possible effect on learning

A speech/language assessment to determine current level of functioning in voice, fluency, articulation and/or language (receptive, pragmatic, and expressive) including a classroom observation

An occupational therapy assessment to evaluate functional mobility, movement and motor performance in order to access and participate in the

(Photo Caption-Facebook post by Amy Trail, a letter sent to April Easton

regarding a student's educational experience)

The Respondent in concern with the need to make a report and in an impartial act as prescribed by the Respondent's Oath of Office decided to contacted David Von Moll, Virginia Comptroller and inquire about reporting wrongdoings. The Respondent was told to file a report under Code of Virginia §30-138 (Below).

 **Von Moll, David** <david.vonmoll@doa.virginia.gov>    ·Fri, Nov 16, 2018 at 9:51 AM
To: votedtamk@yahoo.com

Mr. Kern,

Generally, many of your questions pertaining to the financial operations of local school divisions could be directed to the Superintendent of Public Instruction at the Virginia Department of Education.

Regarding your questions pertaining to reporting wrongdoing, Code of Virginia §30-138 governs duties associated with reporting fraudulent transactions. Also, the Office of the State Inspector General operates the Fraud, Waste and Abuse Hotline for reporting specific allegations.

Please let me know if I can provide any additional information.

David Von Moll

David A. Von Moll, CPA, CGFM
State Comptroller
101 N. 14th St
Richmond, Virginia 23219
david.vonmoll@doa.virginia.gov
804.225.2109

The Respondent received correspondence in which the Alleghany County Public School's Special Education Director, Elizabeth Heath sent Amy Trail in an email. Dr. Elizabeth Heath asked Amy Trail to report to her any systemic issues. She stated in the email to Amy Trail:

> "If you should find that there is something systemic in Alleghany County that we need to fix, I would greatly appreciate your feedback with identifying it"

Dr. Elizabeth Heath, continues in the email stating of Amy Trail:

"I consider you…the support that we need but don't have the resources to provide"

From: Elizabeth Heath <eheath@alleghany.k12.va.us>
Date: Fri, Nov 16, 2018 at 11:49 AM
Subject: providing services to children
To: amytrail@faces-va.org <amytrail@faces-va.org>

Ms. Trail,
I understand you are meeting with parents in Alleghany this weekend. I want to thank you, again, for helping to provide this resource to parents in our area. I look forward to working with you and others from your agency. Please let me know what I can do to help you, and our parents and our kids.

If you should find that there is something systemic in Alleghany County that we need to fix, I would greatly appreciate your feedback with identifying it. I consider you, as I have considered other support services since I have been in Alleghany County, the support that we need but don't have the resources to provide. As we both know, sometimes it takes a village.

I have spent my life working to help children with special needs. For me, it is about the kids. I always encourage staff to keep that as their true north. As long as we do, we'll get it right, even if it takes a while.

Thank you, again.

Elizabeth V. Heath, Ph.D.
Director of Special Education
Alleghany County Public Schools

Approximately between November 20 2018 and December 3 2018 the Respondent had a phone conversation with Amy Trail. The Respondent was told by Amy Trail she was going to provide training for Alleghany County Public Schools.

Below are details of the conversation with emphasis on statements made by Amy Trail. Details of this conversation was shared with members of the Alleghany County Board of Supervisors and Jim Guynn on October 27 2020 by the Respondent sworn under oath during a closed session hearing

**Amy Trail-**

"The consensus of the other parents were, when they didn't know any of this information, I just was chatting with them during their reviews was, she was a pretty effective Sped Ed Director before this Superintendent came in and they said there were a lot of changes"

**Donnie Kern-**

"I made an official complaint and they are going to vote on it on December third (3rd)"

**Donnie Kern-**

"I was told at our last board meeting that 'were not going to do any investigations'" (In a Randy Tucker impression)

**Amy Trail-**

"I get that you don't have much support but you will have a lot of parents behind you now; that will come to the school board meetings to support these policy changes, we can work collaboratively"

"Well actually one of the things that I talked to Dr. Heath about, one of my concerns and I laid it out what I found. I didn't use the word systemic. But I told her all about my areas of concern. One of them was speech, behavioral services, and um and of course the biggest one being child find. Which I told her everybody would be asking for child find for a lot of those kids and she needs to do testing as quick as possible."

"There are all kinds of loop holes to allow this to happen. How about the loop hole with a kid being in a room, there has to be a loop hole to allow that to happen. You know if a kid is not in his classroom for more than five days you should have a policy that says he needs an FBA"

"Obviously your policies are weak my **friend**, otherwise things like this don't happen. It is not just that they're not following, like the law. It's probably because you have weak policies in there. And you're not trying to recreate the wheel. You just want them to firm it up so it keeps things like this from happening. So, if we did find something on child find, something on speech therapy, something on prior written notice; that was the other

thing that I saw that was a systemic problem. If you had any policies on those that were weak, and you wanted, right to fix it, 'to have the special ed regs to reflect these changes because they are in line with this', **I would get a group a parents to come and support you**. And speak about why this needed to be passed and fixed. **I would rally the troops**. I would come. Yeah!"

"I know Dr. Heath herself had a meeting with the Superintendent on Tuesday morning and another one this morning before she talked to me. So, I am sure. You know here is an idea, don't do it. I mean that sincerely. **I told her, I am not asking what is going on. I am just telling you whatever it is it can't be right. So you might want to fix that. I do not want to come down to that school and find out that he is still in a closet somewhere. And I said it just like that.** Because there is way more going on, it's gotta be"

"I am going to talk to her on a couple things. We are going to schedule a training and bring Hank Millward from the Virginia Department of Ed, I haven't told them that…(giggle)…to talk about prior written notice"

"I keep coming back to town, I told her I am going to be back in a week or two for another kid's meeting. I may stop and look at another kid's records

when I am there. They are all at Mountain View. I don't' know what's going on there.

I will be honest Donnie, that is what I called her about. That's why we talked today. Is because the parents that I met, it was blatantly obvious that there was a disability and I had to ask. And dad cannot read on a second-grade level and mom has multiple disabilities. It was blatantly obvious that they were taken advantage of. I told her that on the phone. I was like it's blatantly, it's just obvious. The best thing you can do is fix it immediately. The whole system has failed them. Many times now, probably when they were in school. It is really sad and I think we are going to find a lot more of that, you're right. That is what happens, when they are poverty and uneducated they can't go anywhere, they can't go up without that on or the other. You can't stay uneducated or you will remain poor and they will take advantage of it and I think that principle there might be doing an extra big job of taking advantage of people with disabilities.

"There are definitely, definitely some deficits. You know…they really need…(sigh)…I really think they are going to need some more training. As crazy as that sounds. It's the only way. Because she is not talking about training staff until next year".

"My point is that half of the parents even don't, don't even realize there is a problem. It's not you know what I mean. It's one thing for these parents to step up that know something is going on and ask for help. But there are a lots more that do not know that anything is going on"

"So I got to figure out a way and that's why I was willing to talk to her. I got to figure out a way to go 'hey let's review some kids documents at this school, go get me signed consent from all their parents and let me look at their files'. There has got to be a way to get in there to…I do not think they are going to willing tell me there is a problem, no offense if the dumbasses don't know it…if they do not know something is a social skill deficit Donnie, they don't really know it. I see that a lot with mis understanding about behavior especially"

"You have to learn to turn things around sometimes Donnie. Watch this. It appears Dr. Heath really wants to be my friend. Ok, like she really, like really I am waiting on little emoji icons on my phone or something. Because I have never seen so many emails from someone I have never emailed directly. But neither here nor there. So here is what we do, we turn this around. And go ok you want to play nice, I get you want to play nice and you want me to believe you're going to do training. We make this her idea.

We make these policy changes a good idea and get her to come to the board with you to support you"

"Listen, that is what I am going to do my **friend**. It took me a while to figure it out. But collaboratively the three of us are going to get this done. I will be rallying some of the parents to come as I come into town. And, yes she wants to work collaboratively. She said 'give me a couple things we can do'. Ok, I am going to give it to her. I've given her a chance to fix one situation specifically. I didn't give her everything. **She knows I still have enough evidence to file a systemic complaint if I need too.**

"On top of it Mr. Superintendent, you have failed to meet your indicators that been set forth to many years when it comes to you bring out individuals with disabilities that can read and do math. We propose you starting doing it now because quality of life maters to these children. So yes, I know he wants to run. But he is not going to run from this. Part of the reason I was willing to talk to her is because if she is willing to come aboard and she wants to work collaboratively to fix some things, it is going to be fixing things to make a difference for the kids. Its not going to have anything to do with him. Because that is what it is Donnie. He just thinks he has got all the power. Everybody kind of directed him to being the power but in the end he is not.

He's not. We just need a couple people, and who better than to get aboard than the one I am going "

**'hey I can file these systemics or you can write policy so it doesn't happen again, which one is easier**?' [emphasis added]

"Know I mean, I hate to sound that way but that really is my plan now. We have an opportunity to do this a little from all avenues and I think it is a win for the district. If he wants to talk to me I will explain it to him. But it's not going to work this way, he can't continue to be a tyrant and tell Principles how to handle behavior of kids with disabilities when it's inappropriate like that or I will start filing on him personally. If I find evidence that is what is going on that is exactly what I will do. If he is behind the scenes and on a record somewhere advising these Principles to not refer these kids and I can get some evidence on that I will smack him in a heartbeat. But were not going to find that, your're going to find that all his stuff is verbal. He ain't putting nothing like that in writing he ain't emailed nobody that I bet. But it is like you said "it's just known", just a known thing. "

"Alright I got dinner waiting on me, well talk soon".

The Respondent felt Amy Trail betrayed the children in the Alleghany Highlands by not going through with filing the systemic complaint. Amy Trail under FACES

decided to partner with ACPS and provide training to staff and families. The Respondent doesn't recall training being provided in FY2017-2018, FY2019-2020, FY2020-2021. The flyer states **"Alleghany County Public Schools together with FACES"**.





**JANUARY 23, 2019**
**FREE TRAINING**

Alleghany County Public Schools together with FACES (Families of Autism Community Enrichment Services) are providing a free parent training in the Covington area.

FACES has been providing Special Education Advocacy service and trainings for parents, professionals, and community leaders for over 12 years.

The Respondent from July 1 2018 to December 1 2018 witnessed many surreal happenings within ACPS.

The Respondent and his wife hand an encounter with an administrator. The family drafted a report to share with the Eugene Kotulka, Superintendent.



SYNAPSIS

On Thursday, August 16th 2018. 6:46PM (or at the adjournment of the Mountain View PTO meeting).
███████████████████ sat down at the end of a table where Mrs. Kern and Mr. Kern were seated across from each other. ███was sat next to Mrs. Kern and Mr. Kern. During this conversation there were still about 15 PTO members among the room, and during the conversation ███████████ walked over to speak with Mr. Kern briefly.████████ during the last part (10 minutes) of the conversation joined us around 7:50PM).

Upon ███████ arrival after █ sat down, he looked at Mr. Kern and asked "Is this Mrs. Kern", Mr. Kern responded "yes", ██████ then began the conversation. Below are quotes from ███████ during the conversation (these comments are not in specific conversation order):

- It's no wonder the teachers didn't understand these accommodations I had a hard time myself
- With an IEP, ██would have a case manager to communicate more track progress
- You are to report to me, then███████████
- There are 20 plus other students in the class, you can't expect yours to get extra
- Mrs. Mullineaux and you have a special relationship and she may be showing favoritism
- I told ████████ to not have contact from now on with you on Facebook, it can be putting her in danger and subject her personal message to FIOA.
- If teachers are forced to write 2 positive comments about your child a day, they will be so busy that at the end they will "half ass" the remarks.
- I would get more money to accommodate with an IEP
- Allowing him to retake a test is setting ██ up for failure, its fine now but with SOLS and High School it's going to be worse.
- It's your responsibility to explain to ███████ why █ gets these accommodations, not the teacher's.
- When you go bringing advocates in, they don't understand what we have to work with
- (After we stated ██would have worse anxiety with leaving the classroom)- ██will adjust quick"
- I (referring to the school division) don't have the money to fill 504 accommodations
- These accommodations are not allowing ██to progress
- (When discussing accommodation enforcement) If it's not specifically stated on his 504 we can't accommodate it. If it doesn't say something like helping ███ remember books, notebooks, folders then it does not have to be accommodated.
- I've never seen a 504 this large
- I do not have the staff and resources to fill these accommodations, especially 1 on 1 tests.
- Whoever set these, they definitely needed to be more specific
- You are not allowing and giving him a chance to grow
- You didn't get proper feedback because you didn't go in the chain of command
- I have observed ███████ and ██ seems to be high functioning and normal besides██ has some anxiety. (After explaining we had to spent $700 to get ███ assessed because the school refused to assist twice with the effort..."I didn't do all of this to not get ██ help"). There so much more to it than that.

- If ▇ appears to be high functioning and is now upstairs in ▇▇▇▇ will be expected to do what the rest do.
- These are brand new teachers, you can't expect them to know everything about your child and how to communicate (communicate the accommodations).

The Respondent received the following text message from an employee of the school division:

Lol, the school district does get more money for special education students but I assure you the special education department doesn't see it and it sure as heck wouldn't trickle down to help ▇▇ CBK ▇▇ I called ▇▇▇▇▇▇▇▇ to see if ▇▇▇▇▇▇ had said anything to her about ▇ CBK ▇ or a meeting. I didn't tell her I was talking to you. ▇▇▇▇▇ told her they would call a meeting in the next week or two and ▇▇▇ would be there but that he and ▇▇ would decide who else form the district came and that it might not include ▇▇▇▇ or I. Just a heads up. We may not even be invited to the meeting and I can't overrule them because I have no authority. You guys need to ask for Heath to be there for sure. Especially if they are trying to block us from coming. This is insane.

7:02 PM

The Respondent received the following email message from an employee of the school division:

**your letter to the editor, ACPS concerns...**
@hotmail.com]
Sent: Wednesday, October 24, 2018 4:06 PM
To:  Donnie Kern

Hello, Mr. Kern,
I read the original article written about the school board meeting as well as your responding letter. Thank you for asking questions. Please continue to do so. Until Mr. Tucker stands with you instead of against you, however, I'm afraid the end result will be more of what you have already experienced. I'm not sure why the other board members cannot see (or refuse to see) the hidden trails.
Your call to action resonated with me, but you need to know that parents have tried to stand up. Unfortunately, many of the parents who understand what has occurred here since 2015 also work here. We have met retaliation in ways that would surprise you, including retaliation against our children and our finances. I still have three children in this system, and I need my job. At this point, I am justifiably afraid to voice my concerns.
Sincerely,

"The pupil dilates in darkness and in the end finds light, just as the soul dilates in misfortune and in the end finds God."
-Victor Hugo. *Les Misérables*

The Respondent made a report to Child Protective Services after receiving an email from another school employee that an African American child was being discriminated against. The Respondent first reported it to the School Board and Eugene Kotulka, Superintendent, but Alleghany County Public Schools refused to investigate the matter.

From:
Sent: 2018 7:35 PM
To: Donnie Kern
Subject:

On 2018, informed me that they would be placing a student who will be known as "the student", into

All the while the student is out of the classroom and not receiving instruction, placing the student further and further behind.

I hope that something can be done I am of the belief that none of this would be happening were not African American, someone needs to advocate for the student.

**From:** Eugene Kotulka
**Sent:** Tuesday, November 13, 2018 7:28 AM
**To:** Craig Lane; Danielle Morgan; Donnie Kern; Gerald Franson; Jacob Wright SchBd; Jennifer; Seckner; Randy Tucker
**Cc:** Fred Vaughan
**Subject:** FW: Complaint/Student Investigation

Mr. Kern

Thank you for sharing the attached information as well as the information below. At your convenience, please provide the necessary information to begin the investigation.

Regards,

Gene Kotulka

The Respondent spoke with a parent on November 17 2018 at or around 10:00AM; Victoria Graybill. The parent recounted their experience with the ACPS and the Respondent contests it was the most traumatic situation that the Respondent was made aware of Victoria is a grandmother and parent of a student because the student's birth mother passed away due to cancer. Victoria's child's experience in recounting it to the Respondent was deeply troubling. The treatment she received as a parent when she tried to reach out to the school board in concern was also equally troubling. The Respondent shared in detail this conversation with members of the Alleghany County Board of Supervisors and Jim Guynn on October 27 2020 during the hearing. The information shared by Victoria during the conversation shocks the moral conscious. Below is a partial excerpt from the transcript (page 97 Line 4-21) from the hearing under oath the Respondent participated in.

4          A.      She said, "My ▮ is so afraid of the

5     ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, when ▮ was

6     put to sleep for surgery ▮ woke up screaming

7     their name ▮ was so combative.  They had to put

8     ▮ back to sleep.  The anesthesiologist came out

9     and looked at me and goes, 'who are these people?'

10    I said, 'Those are teachers.'  And then the" --

11    just me and the anesthesiologist.  "Then said,

12    'there is a special place in hell for them because

13    anybody that can do whatever happened to that

14    child and be that beat ingrained and fight like ▮

15    does, ▮ woke up looking like a wounded, cornered

16    animal, fighting for ▮ life, screaming those

17    teachers' name.'

18          She goes on to say, "She documented

19    in ▮ medical records and said I can't believe

20    the School Board would refuse to talk to you about

21    this."

When the Respondent first attempted to recount this story for members of the

Alleghany County Board of Supervisors and Jim Guynn, the Respondent was

displaced and stricken with emotions and tears, unable to speak as if the

Respondent's breath was taken away. Causing a recess to convene.

```
23   occasions.  She stated, "My ███ is so afraid."
24   Hold on.
 1          Q.    Mr. Kern, this would be a great time
 2   for us to stand up and stretch about ten minutes
 3   and take a break.  Is that all right with you?
 4          A.    Yes.
 5             (A recess was taken from 11:15 a.m.
 6          to 11:29 a.m.)
```

**(Transcript page 90 Line 23 to page 91 Line 6)**

Victoria asks the Respondent a question during the conversation:

**Victoria-**

   **"So who speaks up for my child? Who stands up for this kid?"**

**Donnie Kern-** in reply

   **"I will stand up for the kid"**

```
 6                So she said, "So who speaks up for my
 7   child?  Who stands up for this kid?"
 8                I said, "I will stand up for the
 9   kid."
```

**(Transcript page 98 Line 6-9)**

The Respondent eventually receives a notarized letter from Victoria below:

To whom it may concern

I Victoria L Graybill mother of ▓▓▓▓▓ give my consent and permission to D. Kern Alleghany school board member to have complete and full access to any school records, testing results, medical reports and records, emails, text messages or any other information about or concerning ▓▓▓▓ ▓▓▓▓. As a school board member it is my understanding that he should have access to the mediation agreement but if consent is needed I hereby grant it to Mr. Kern. I do not believe he needs my consent because it is my understanding that Alleghany considers the mediation still uncompleted. I also give Mr. Kern consent to speak about ▓▓▓ experience in the Alleghany Public School System to Robert Gard Physicians to Children or to others trying to access an appropriate education for their child through the school system. Our experience was toxic and detrimental to ▓▓▓ and sadly could not be resolved forcing us to relocate to prevent futher damage developmentally, mentally and financially. ▓▓▓▓ suffered severe regression and mental abuse with absolutely no accountability from the school system. This is well documented in all of ▓▓developmental and medical records. These records and reports were all offered to Dr. Heath in IEP meetings but refused by her without her even reading the information offered so I am unsure if they are part of the school file. It is my belief that Mr. Kern is trying to improve the treatment and access to appropriate education and to keep another child from enduring what my child went through.

Victoria L Graybill

LENA MICHELLE WARREN
NOTARY PUBLIC
REG. #7796781
MY COMMISSION EXPIRES
10/31/2022
COMMONWEALTH OF VIRGINIA

In the letter drafted by Victoria it states:

> **"It is my belief that Mr. Kern is trying to improve the treatment and access to appropriate education and to keep another child from enduring what my child went through"**

The Respondent in an act of impartiality as prescribed by the Respondent's Oath of Office decided to file a report with state officials: Superintendent of State Police, State Inspector General, and Auditor of Public Accounts. The state officials indicated they did not have the statutory authority to take action. Susan Armstrong with the Virginia State Police said there was a "budget problem". The Respondent requested that the Virginia Department of Education review the report. The Virginia Department of Education also indicated that it too did not have statutory authority to take action. Virginia Department of Education's response from Thomas Broyles stating:

> Based upon our review of your submitted materials we see no actionable VDOE issues within our scope of authority

There was never any claim by any official that deficiencies didn't exists. The only claim made was that these state officials lacked the statutory authority.



# COMMONWEALTH of VIRGINIA

## DEPARTMENT OF EDUCATION

P.O. BOX 2120
RICHMOND, VA 23218-2120

February 12, 2019

Mr. Donnie T.A.M. Kern, School Board Member
Alleghany County Public Schools
100 Central Circle
Low Moor, Virginia 24457
dkern@alleghany.k12.va.us
quilltaxation@gmail.com

Dear Mr. Kern:

Thank you for providing information on your concerns with Alleghany County Public Schools. We have carefully reviewed three broad areas identified by you including finance, special education, and the Virginia Freedom of Information Act (FOIA). Our analysis included input from subject matter specialists including the auditing firm of Robinson, Farmer, Cox & Associates CPAs, who conduct the combined annual county and schools audit along with the school activity funds (SAF) audit as part of our financial review. The Virginia Department of Education (VDOE) is not a compliance or enforcement agency for FOIA, and accordingly, do not have jurisdiction in this area.

Based upon our review of your submitted materials, we see no actionable VDOE issues within our scope of authority. Again, thank you for bringing your concerns to our attention. We consider this matter closed and will not take any further action at this time.

Sincerely,

Thomas W. Broyles, CGFM, CPA
Director of Business and Risk Management

Copy:   Dr. James F. Lane, Superintendent of Public Instruction

If the Respondent's report to state officials had been thoroughly reviewed it would have found some troubling issues that go beyond a "budget problem". One issue was the intentional and deliberate misappropriation of appropriated funds designated for Standards of Quality. A school division receives funds based on the Virginia Budget Bill which is to appropriate funds for the implementation of Standards of Quality; translation required to educate children. ACPS FY2016-2018 never appropriated "Debt Service" a 7100 account under the ASFRIN Chart of Accounts. ACPS during this time period never received additional appropriations from the Alleghany County Board of Supervisors specific for "Debt Service" (below)

| "Debt Service"- | Budgeted | Spent |
|---|---|---|
| • FY2015-2016: #7100- -"Debt Service": | $0 | $410,967.50 |
| • FY2016-2017: #7100- -"Debt Service": | $0 | $406,185.00 |
| • FY2017-2018: #7100- -"Debt Service": | $0 | $410,997.50 |
| • FY2018-2019: #7100- -"Debt Service": | $0 | $0 |
| • FY2019-2020: #7100- -"Debt Service": | $0 | $0 |
| • FY2020-2021: #7100- -"Debt Service": | $0 | $0 |

FY2016-2017 (below) Year End Fund Balance shows a transfer of **$390,592.50** in Debt Service 7100. The other **$15,592.50** (Total **$406,185.00**) was transfer at another time.

| | | | | | | |
|---|---|---|---|---|---|---|
| 6200 | PRODUCTS | $ | 2,384,523.00 | 173,347.82 | $ | 1,029,798.50 | $ | (27,373.98) | | 102.72 |
| 6300 | ARCHITECTURE/ENGINEERING SERVICES | $ | 410,000.00 | $ | - | $ | - | $ | 438,000.00 | | 8.07 |
| 7100 | DEBT SERVICES | $ | - | $ | - | $ | 37,035.73 | $ | (37,035.77) | | 380.00 |
| 7200 | DEBT-ACTIVITY BOND TRANSFERS | $ | - | 390,592.50 | $ | 426,185.00 | $ | (486,185.00) | | 100.00 |

The **$390,592.50** payment for "Debt Service" went directly to the Alleghany

County Board of Supervisors via the Treasurer (below)

| 179292 | 6/13/2017 | TREASURER, ALLEGHANY COUNTY | DIRECT | $ | 4,101.73 |
| 179293 | 6/13/2017 | WALMART | DIRECT | $ | 390,592.50 |
| | | | DIRECT | $ | 21.72 |

ASFRIN Chart of Accounts states in regards to the treatment of "Debt Service":

> "Only the debt service/capital funds appropriated to and paid directly by the
>
> school division should be reported on the ASFRIN"

### 67000  Debt Service and Fund Transfers

A number of outlays of governmental funds are not properly classified as
expenditures, but still require budgetary or accounting control. These include
debt service payments (principal and interest) and certain transfers of monies
from one fund to another. These accounts are not used with proprietary funds.

Debt service payments made by the local governing body on behalf of the school
division (i.e., the funding is not appropriated to the school division budget) should
not be reported as debt service payments on the ASRFIN. Only the debt
service/capital funds appropriated to and paid directly by the school division
should be reported on the ASRFIN.

The "Debt Service" was not appropriated to ACPS, but these funds were paid out

to the Alleghany County Board of Supervisors. This mean the funds sent to the

Alleghany County Board of Supervisors came from funds that was supposed to

education children. Funds are misappropriated when the original beneficiary of the

funds is changed. In situation the beneficiary of the funds changed from students to the Alleghany County Board of Supervisors.

ACPS consistently has had consistent trends in anomalies when it came to unspent funds. However, on **January 8 2019** the Respondent finally found out why. The Respondent's report to state officials had already been filed. The reports existence had not been made public until after this meeting. When the meeting was over the Respondent contacted a member of the Alleghany County Board of Supervisors; Richard Shull.

The **January 8 2019** meeting revealed through budget discussion that ACPS deliberately budgets appropriated funds absent any intention of actually spending it during the fiscal year. The term **"carryover"** is used frequently. This term describes funds that are appropriated but never spent. The term is used primarily to describe the funds that are unspent before they are carried-over (i.e "carryover") into the Capital Fund account at the end of the year. When the term is used in the context of budget discussion it is used in speaking of money that is going to be appropriated to education students but will not be spent.

During the meeting discussion on School Bus spending the term **"carryover"** is brought up. In its contextual use **"carryover"** is discussed to offset under budgeted school bus expenses.

Eugene Kotulka, Superintendent states:

> "The one thing I don't like in here is we cut out the purchase of our buses, so my recommendation is, we are going to have some **carryover** money **again** at the end of this year **again**. That we will take and use some of that for buses, **people are getting exciting down there alright**".

Below is a chart which pictures the budgeting and spending on school busses for ACPS between FY2015-FY2021. ACPS overspent $453,418 on busses, all in part because of **"carryover"**, i.e money which was appropriated to education students would not be spent in order to subsidize school bus purchasing.

| "School Bus Purchasing"- | Budgeted | Spent | Unspent /-Over |
|---|---|---|---|
| • FY2015-2016: #3500--"School Bus": | $86,806.00 | $255,795.00 | $-168,989 |
| • FY2016-2017: #3500--"School Bus": | $133,623.00 | $271,052.00 | $-137,429 |
| • FY2017-2018: #3500--"School Bus": | $174,806.00 | $254,496.00 | $-79,690 |
| • FY2018-2019: #3500--"School Bus": | $174,806.00 | $0 | $174,806.00 |
| • FY2019-2020: #3500--"School Bus": | $70,144.00 | $175,962.00 | $-105,818 |
| • FY2020-2021: #3500--"School Bus": | $70,144.00 | $206,442.00 | $-136,298 |

**Total Overspent: -$453,418**

FY2019-2021 school bus was budgeted at $70,144. The average cost to purchase a bus is approximately $90,000. "Budget Problem" absolutely.

January 8 2019 budget discussion eventually took a turn for the worse when it began to discuss eliminating the Nursing Coordinator, Leslie Downer. The Respondent knew Leslie Downer and worked with her on occasion specific to the Safe School Committee years before the Respondent was a member of the School Board. It is the Respondent's understanding that Leslie Downer has disabling conditions. In this discussion it is also mentioned about using **"carryover money"** for a one-time extension of the Nursing Coordinator position.

The discussion below:

**Craig Lane-** "Where are we at on the nursing, nurse

**Eugene Kotulka-** "This would eliminate the…

**Keven Rice-** "Nursing Coordinator

**Eugene Kotulka-** "Yeah"

**Keven Rice-** "and Nurse Secretary"

**Eugene Kotulka-** "Yeah"

**Craig Lane-** "I think we are going to have a lot of political hot water if we eliminate those next year…just my opinion"

**Eugene Kotulka-** "If you add them back in you will need to find another $98,000"

**Craig Lane-** "I don't know what you guys think but someone brought that up at the last meeting we had…"

**Danielle Morgan-** "My concern is kind of like having the nurses in the school, I had talked to Gene I would like to see what those two position do, as in like a work study, what are they providing support wise. You know because, to be realistic we are looking at three and a half teaching positions too. You know so like that are direct to the students to. So, I think we have to weigh all those options. We got a nurse where they are, what are those positions doing and what are they bringing? You see what I am saying, I have a hard time justifying fighting for that money when we got three teachers going out the door.

**Jennifer Seckner-** "I think it would benefit us to have the Medicare billing person"

**Craig Lane-** "You guys were at the board meeting with me, it was kind of alluded to the fact that we weren't going to change anything. So, if we end up changing that…"

**Danielle Morgan-** "In all fairness to us…"

Craig Lane- "I am good with that, but nobody is going to hear that conversation, all their going to remember is"

Randy Tucker- "I thought we weren't going to eliminate any nurses" (meaning nurses serving students directly)

**Craig Lane**- "That's not the way people took it"

**Keven Rice**- "Thinking strategically if we, this is just my opinion, if we say we are going to find funds for that then there is no incentive for the foundation to fund the grant"

**Danielle Morgan**- "Exactly it is a full-time position right now for both school systems, so why would we fund it, If were are going to fund it then they will be ours not Covington"

**Eugene Kotulka**- "Now my job is to ugh to direct a path a little bit on this, just like with the teaching staff when Mary Jane does the analysis of the teaching, what teaching staff we need that's based on her calculations on what we need. Same thing with the nursing program, I said this all along, we do not need the nursing coordinator position. We do need the Medicaid person. We can handle the oversight of the nursing program up here in the central office. That is where I came from. Mr. Vaughn…I think he…did you provide them…

**Jacob Wright**- "He got a lot smaller over there"

**Eugene Kotulka-** "I know he hides on me doesn't he, he try's to hide behind Mary Jane. Thank you Mary Jane"

**Mary Jane-** Let me just slide back a little bit

(Everyone Laughs at Fred Vaughn hiding)

**Eugene Kotulka-** Did we not provide the board who has the nursing coordinator position?

**Fred Vaughn-** I don't know if we provided the board with that

**Eugene Kotulka-** We do have that information so we will provide that at the next meeting

**Danielle Morgan-** "In one of my possibilities that I brought up in discussion with Gene before also, is once we get a some sort of work study as to what that position is doing for our schools, as we are looking at funding it, is that something that can be absorbed by a giving a current nurse in a building more hours. Like a supervisory whether providing care but then have extra hours to do those elements.

**Jacob Wright-** "It actually sounds like part of this grant that they are giving the nursing coordinator more responsibility. Because Its sounds like Mrs.

Snead Johnson doesn't think the nurse coordinator maybe doesn't have enough to do"

**Craig Lane-** "That's probably the case"

**Craig Lane-** "I just want make sure everybody understands that what people came out of that meeting as if nothing is changing"

**Jacob Wright-** "But it sounds like to me that she was through this grant she was adding more responsibility"

**Eugene Kotulka-** "she was"

**Craig Lane-** "If that happens then I am not sure then the current person would stay in the same job then, that is probably what's going to happen"

**Randy Tucker-** "Let me ask the board a question. Did you get an email after that meeting? What did ya'll think of the email? Did you read it?

(The conversation takes a turn to critique Autumn Anderson's email sent on November 20 2018 to the Board in support for the nursing position and gets off topic)

**Eugene Kotulka-** "You can also do a temporary one-year solution. **That would be to use some of the <u>carryover</u> money.** Mr. Rice and I had talked

about this all day today…If we take that approach, we make it crystal clear the following year it is done.

**Craig Lane-** "I am ok if we don't do anything with it. I just want to make sure we go in eyes wide open, that there will be fallout after. I know it's going to come. We need to have the same story coming out of here that's all"

**Jacob Wright-** "It's pretty amazing we don't have any media here right now"

**Randy Tucker-** "That's a good thing, come out of close session media's gone"

**Randy Tucker-** "If we have closed session at the beginning of the meeting it would be quicker"

**Eugene Kotulka-** (chuckles with a hearty laughter)

**Jacob Wright-** "Did we give him something fun to talk about"

**Danielle Morgan-** "He ran"

**Jacob Wright-** "Maybe we need to plan that more often"

**Craig Lane-** "I just want to make sure everyone's eyes wide open on this"

**Eugene Kotulka-** "I just don't think, again professionally I am saying I don't think we need the nurse administrator's position and I think we can manage successfully up here and do a great job"

**Danielle Morgan-** begins to talk absorption of the duties. Then about the need for physicals to be done.

**Keven Rice-** "I would really be surprised if she is doing those now"

**Danielle Morgan-** "That's why I want the numbers, the work study"

**Mary Jane-** "I don't think she is doing anything"

**Jan Hobbs-** "I don't either"

**Danielle Morgan-** talk about a plan with a vendor to provide physicals.

**Jacob Wright-** "I don't even know who this person is in this position or anything but it sounds like there is an overall feeling that person is not doing a whole lot right now…am I kinda…"

**Eugene Kotulka-** "You are but um"

**Randy Tucker-** "Just say it, it is what it is"

**Eugene Kotulka-** "You have ugh"

**Jacob Wright-** "It's like were in closed session but not"

**Danielle Morgan-** "That's why I want the work study"

**Eugene Kotulka- "We have an ADA, we have an ADA compliance issue here as well, a major one, a major major one"**

The Respondent then decides to ask a question involving the benefit of the nursing program and how it could be a requirement for Special Education purposes.

**Donnie Kern-** "I got a question. The lawyer is here and it would be a good one. So, what if a child needs some sort of medical service that a nurse can provide in order to attend the school. Would the school then have to be forced to provide that service in order to attend the school?

**Attorney/Reed Smith-** "Are you talking about like special education?"

**Donnie Kern-** "So, if you have a kid with an IEP and the kid has medical conditions that require a certain service be performed maybe routinely through the day in order for them to attend that school to get an education would the school then have to provide that nurse during the day in order to provide that service.

**Danielle Morgan-** "From a nursing perspective if they needed something that a nurse could prescribe, they wouldn't have a clean physical to attend school and **they would be homebound**.

**Randy Tucker-** <u>"Let me share something with the board you're not aware of, back when I came back on the board the very first time, May Jane may know. Our school division under Special Ed was doing a lot of things we should have never got into"</u>

**Randy Tucker-** <u>"We don't' need to be in the business in putting in in-ground swimming pools at your house because somebody says "my child needs a swimming pool at home" and we were putting in in-ground pools.</u>

**Randy Tucker-** "A lot of things happen in this school division that when Bob came on he looked at and shook his head and said 'what in the cot is going on here', and we stopped it. We said 'we are not providing these services just because somebody said 'my kid needs a swimming pool'""

**Randy Tucker-** <u>"We don't care if a kid needs a dog we're not supplying the dog"</u>

**Craig Lane-** whispers to the person next to him, "you got your swimming pool"

**Danielle Morgan-** "If they have that grave of a medical condition they would be on homebound"

**Donnie Kern** – "It could be as simple, not one that doesn't pass the bill of health here.  One that requires a certain service in-order for that child to

attend school. Let's use a hypothetical if for some odd reason someone says 'yes he can attend school but he will need this in-order to attend school' would the school have to provide the service?

**Attorney/Reed Smith-** "The answer is Yes if the student's IEP team says that is what the student requires for a free and appropriate education"

The Respondent couldn't believe what he had just heard. In protest the Respondent walked out of the next school board meeting, declaring the School Board's actions similar to the display of Pee Wees play house. The Respondent eventually called Richard Shull and explained to him about the situation and asked to speak with members of the Alleghany County Board of Supervisors. The Respondent sent Richard Shull details of the complaint via email on Jan 11 2019 after their conversation.

———— Forwarded message ————
From: Donnie Kern <quiltaxation@gmail.com>
Date: Fri, Jan 11, 2019 at 11:22 PM
Subject: 30-363 Complaint
To: <ubustd@aol.com>

I had to compress the file as it was so large. So you will need to download the folder, then click on it to open and save. Its 148 pages. I am sending a couple other attachments in another email.

–

Donnie T.A.M. Kern, EA, MSA
540-958-4958
Check Us Out On Facebook!

The report the Respondent sent to state authorities was eventually publicized and

the Respondent was retaliated against by ACPS on February 25 2019 via public

bedlam. The retaliation was a shanghai tactic carried out in a surprise. The initial

agenda provided to the public was missing the additional agenda items added at the

beginning of the meeting:

> Chairman Tucker called the meeting to order at 6:00 p.m.  The call to order was followed by a moment of silence and the recitation of the Pledge of Allegiance.
>
> Chairman Tucker announced the following revisions to the agenda:
> 1. Removal of 19-174-Recognition of School Board Clerk/Deputy Clerk Appreciation Week
> 2. Addition of F. to the Consent Agenda-Minutes of January 8, 2019 Called Meeting and Work Session
> 3. Addition 19-187 Dee Ann Tickner's students will be singing for the board before Item 19-175.
> 4. Addition of 19-190-Email Addressing the Board to be inserted before Item 19-175.
> 5. Addition of 19-191-Superintendent's Report on the Kern document inserted before Item 19-175.
> 6. Addition of 19-192-Document inserted before Item 19-175.
> 7. Item 19-173-Recognition of School Board Member Appreciation Month will be moved to after 19-175 School Board Member Comments.

Above you can see the agenda items that were added at the start of the meeting

which were not on the original agenda available to the public.  #4, Item 19-190,

which is a letter drafted by Amy Trail. The individual who once called the

Respondent at hero.



Amy Trail's letter as provided to the school board to be read aloud publicly

contained many false statements.

**(19-190) EMAIL ADDRESSING THE BOARD**

Mr. Tucker shared an email with the Board from Amy Trail. The email was sent to Dr. Heath and Ms. Trail asked that she share it with the board. The text is as follows:

*First and foremost, I want to thank you sincerely for taking time out of your day to speak with me yesterday. I hope you do understand that all I want to do is to help the children here and that I want to be a resource, if needed by anyone in your area - professionals and parents combined.*
*You did touch on yesterday someone saying things about FACES in relation to us coming in to review IEP's, etc... I wanted to explain a little of that to you so you will fully understand. When I agree to review IEP's as a community service, we do not charge those families for those services but instead only give them information and suggestions but it is appears that sometimes people think we are going to come in and attend meetings and 'fix' things when we have never promised to do that. But on top of that, it appears that a couple of people in your community got very upset that I would not fix their situations. I*

*would love to have the time and the money to come and help them all but I can only do what I can with what resources I have available to me.*

*But there is one individual that found me who's behavior was so outrageous to me that I did not even do their review personally because I could not take another round of his hate speech especially because his a part of the fabric of the district. He stated to me personally "I do not want my child in the 'retard' room" and because I understand the climate of your area. I said nothing to him at that time but instead assigned him to another Advocate and did not share this information with her only for him to say it again to her! So, after that, no, I did not help him and as a matter of fact, I cut him off from any access to me as it was then obvious to me that his mission is not even close to the same as mine. I am a very understanding person of differences but the one thing I will not tolerate is anything that makes anyone feel less than and it is obvious from his comments he is not for equality of all (even though he has a special needs child). Honestly, I even considered having this addressed with the School Board but I do not know them personally, I did not want to get more feedback that lined up with his as it would make me sick. All children, including ones with intellectual disabilities are valued by me and always will be so having an individual on a school board who is so uneducated about this one subject and the matters that surround having a complex child with severe needs is gross.*

*I am sorry that I am having to bring this to you but I could no longer carry this nasty around in good conscious without ensuring that something is done to address it because not only did he offend me personally, he also has said this to others including some of the parents he is supposed to be 'serving' and it is discriminatory.*

*If you need to discuss this more, I would totally understand or if you would like any suggestions, I highly recommend some disability sensitivity training in the district to help him and others with this subject before it explodes.*

*Thank you for listening,*
*Amy*

Members of the Alleghany County Board of Supervisors passed a baseless

resolution on March 4 2019 seeking the Respondent's resignation.

BOARD OF SUPERVISORS
COUNTY OF ALLEGHANY
Covington, Virginia

At a special call meeting of the Board of Supervisors, Alleghany County, Virginia held on Monday, March 4, 2019 at 5:00 P.M., in the Board Room of the County Governmental Complex thereof, the following action was taken:

| MEMBERS: | VOTE: |
|---|---|
| Stephen A. Bennett, Chairman | YES |
| Cletus W. Nicely, Vice-Chair | YES |
| Shannon P. Cox | YES |
| G. Matt Garten | YES |
| James M. Griffith | YES |
| Richard L. Shull | YES |
| M. Joan Vannorsdall | YES |

On motion of Mr. Shull, seconded by Mr. Nicely, that the following resolution be adopted:

WHEREAS, Mr. Donnie T. A. M. Kern has failed to perform duties of a School Board member including Mr. Kern abstaining from voting on matters before the School Board and failing to participate in School Board meetings; and

WHEREAS, Mr. Kern submitted documents to the State Police, Auditor of Public Accounts, and State Inspector General on December 11, 2018 which contained unfounded and false allegations against the School Board and its employees which has been injurious to the school division and community as a whole; and

WHEREAS, it has been reported that Mr. Kern made offensive and inappropriate reference to special needs students;

NOW, THEREFORE, BE IT RESOLVED that the Alleghany County Board of Supervisors request that Mr. Donnie T. A. M. Kern, Clifton Forge West District School Board Member, resign immediately from the Alleghany County School Board for the good of the County of Alleghany, its school division, and its citizens.

Unanimously adopted.

A COPY TESTE:

*Melissa A. Munsey*

Melissa A. Munsey
Deputy Clerk to the Board

Steve Bennett, Chairman of the Alleghany County Board of Supervisors threatened the Respondent stating (https://www.youtube.com/watch?v=R-JUXcJfNS0):



"...if he doesn't it will be up to the Board to decide if we want to take it to the next level...I think the next thing the government agency can do is allowable by law to petition the court to have a judge remove him um we can take our attorneys, file suite, course if he is opposed to it, he can hire some attorneys and be opposed. But I will be honest with you there is not a judge anywhere in this state that won't remove him from the board..." (Courtesy Alleghany Journal)

"There is not a judge anywhere in this state that won't remove him from the board" Steve Bennett, Chair Alleghany County Board of Supervisors.

The Respondent is the owner of Quill Accounting and Tax LLC. In justifiable self-defense Quill Accounting and Tax LLC issued a statement in regards to the request for his resignation, and in response to the statement made by Amy Trail which was provided to the school board to be read aloud on February 25 2019.

Side Note: On October 27 2020 the Respondent during his testimony under oath, stated he didn't recall ever making the statement specific to the "R" word. The Respondent has attention deficit disorder. This was clearly evident during the six-hour interrogation on October 27 2020.

Below is the statement provided by Quill Accounting and Tax in justifiable self-defense.

.



# QUILL
## Accounting and TAX, LLC.
### Est. 2014

# OFFICIAL STATEMENT

Honorable Alleghany County Board of Supervisors and the greater Alleghany Highlands Community.

I will respond separately at a later time to the details within Amy Trail's letter as well as the details contained within your resolution R-19-6a that was unanimously passed on March 5th.

In response to your request for my resignation, I have received enormous support from community members; school staff, family, and friends to stay the course and provide a voice for the teachers and children. I want to thank everyone for your calls, letters, and anonymous letters. I have sought religious counsel as well as legal counsel. I have done nothing to warrant my resignation.

This school system for a very long time has deprived many students with disabilities of an appropriate education due to the affordability of resources, waste and abuse, "budget problem" as the Virginia State Police indicated we have, and/or whatever we can all come to an agreement to call it. Due to this misalignment of resources you have oppressed the hopes and dreams of many. You placed families into a dismal situation who have relied upon education as a chance for a successful life. Your request for my resignation is nothing more than an effort to silence the only voice these children have in getting these resources back so they can receive the appropriate education that has long been denied. I have attached a redacted, notarized document from one of the many families who have been denied this appropriate education to share their story. This family was denied access to redress the situation with the School Board; why? On January 8th a School Board Member said "If we give them a hearing, we have to give everyone a hearing". Sorry parents of Alleghany County, no hearings for you! This family was forced out of this community. One day I hope I will have the opportunity to welcome them back.

Mr. Bennett your recent comment in the Virginian Review, "The board does not micromanage the school division as it evaluates its budget proposal...we give you what we can afford to give you", is offensive to the families who have children with disabilities. This affordability of funds is counterintuitive to the objective of Title 22 which requires a budget be funded based on necessity not affordability. When the locality only provides what it can afford, it is predetermining the outcome of many children's lives versus fully funding what is needed to support children with disabilities. This funding methodology is also going to be the catalyst why our teachers will never enjoy the pay scale they deserve.

There are two methods of appropriating the school division budget: fund by "major category/classification" or "lump-sum". I recommend you move to an appropriation by major category which would provide greater transparency and oversight of funds used to educate children. The current laissez-fair, "lump-sum" appropriation method currently does no justice for the children, families, or taxpayers for transparency and safeguarding the use of these precious dollars. I also recommend you end the "unspent fund rollover" policy that allows unspent funds to be carried over into the capital fund. This policy encourages the inappropriate withholding of resources so they can be rolled into the capital fund and used for the next year.

We all pledge an allegiance to the flag of the United States; please remember we pledge this allegiance also to the republic for which it stands. A republic is a system of governance that serves the will of the people. This school board has been oppressed through the lack of a republic due to its current appointment process. Please let the people of this community decide its future in education by giving the community the ability to choose who should govern their school system through the election process. If the Board of Supervisor's only care is to lend money, then let the people decide which direction we need to go. America is about life, liberty, and pursuit of happiness, I was built to serve the electorate, these children and teachers; please do not deny me this pursuit or anyone else who wishes to serve to make their school system great.



I hope we can all work together through these dark times; I believe in diplomacy. This may not be the response you wanted but you will not be getting a resignation from me, with best wishes I remain

Sincerely, your loyal public servant

Donnie T.A.M. Kern

School Board Member      &          Owner
Clifton Forge West District         Quill Accounting and Tax, LLC

To whom it may concern

I ▓▓▓▓▓▓▓ of ▓▓▓▓▓▓ give my consent and permission to Dr Kern Alleghany school board member to have complete and full access to any school records, testing results, medical reports and records, emails, text messages or any other information about or concerning ▓▓▓▓▓▓. As a school board member it is my understanding that he should have access to the ▓▓▓▓▓ but if consent is needed I hereby grant it to Mr. Kern. I do not believe he needs my consent because it is my understanding that Alleghany considers the ▓▓▓▓▓▓▓ I also give Mr. Kern consent to speak about ▓▓▓▓ experience in the Alleghany Public School System to ▓▓▓▓▓▓ or to others trying to access an appropriate education for their child through the school system. Our experience was toxic and detrimental to ▓▓ and sadly could not be resolved forcing us to relocate to prevent futher damage developmentally, mentally and financially. ▓▓▓ suffered severe regression and mental abuse with absolutely no accountability from the school system. This is well documented in all of his developmental and medical records. These records and reports were all offered to ▓▓▓▓▓ in IEP meetings but refused by ▓▓ without ▓▓ even reading the information offered so I am unsure if they are part of the school file. It is my belief that Mr. Kern is trying to improve the treatment and access to appropriate education and to keep another child from enduring what my child went through.





# QUILL
## Accounting and TAX, LLC
### Est. 2014

## OFFICIAL STATEMENT

Honorable Board of Supervisors and the Greater Alleghany County Community

Amy Trail (famed child advocate) sent a letter in February to the Alleghany County School Board which provided my usage of a word that was out of context in addition to other false statements that are not true.

My use of the word "Retard" to identify a program (not a child, student, or individual) and its lack of resources. My use of this word was indeed a poor choice. I did not aim this word at any student, child or individual; only to identify a program. I deeply regret using this identifier to explain how this program needed more resources. Never did I intentionally use this word to offend anyone. I grew up in the 80's and this word was culturally acceptable; I must admit I am behind the times. What I needed the most was to be corrected for my use of the word when I said it; not to be publicly embarrassed, harassed, defamed, and retaliated against five months later.

When I worked for the YMCA, I encountered a situation similar to this. An individual was using sexual innuendos towards a female employee. I immediately intervened and corrected the individual. This level of correction is what I needed, but never received. I was under the belief that my use of the word was acceptable and that my use of it didn't offend anyone in the context that it was used. I apologize to those who may have viewed my use of this word to be offensive. It was never my objective to offend anyone, or to undermine the amazing work and service by the professionals in this program. I now stand corrected. I promise I will do better.

Amy Trail mentioned that she was so offended that she cut off all communication with me. This is 100% inaccurate. As I can recall these conversations occurred in October. Amy Trail and I had many conversations up until the beginning of December. During one of them she hailed me as a "hero".



Amy Trail
You are my hero

Thanks Amy...

In addition, as of February 26th 2019 we were also still friends on Facebook. Despite Amy Trail's dishonesty and lack of credibility in her letter, along with her motives to send school officials this letter 5 months later should position you to question her loyalties and involvement in this situation. It takes a unique situation to cause a child advocate to abandon their own obligation to protect children, confidentiality of a family, and betraying a school board member who was assisting you in collecting information to file a systemic complaint. Instead of filing the complaint Amy Trail opted to train staff and parents. This training would not correct the "budget problem", the denial of an appropriate education for individuals with disabilities, and the malfeasant governance of our school. A systemic complaint was needed to at least take care of the appropriate education part. As you will see below, this was the plan; we do have systemic issues. She reviewed 21 files, and all 21 had issues. That's 100%!

 Amy Trail created a poll.
O Admin · November 16 at 0.27 AM

Issues in Alleghany County - if any of these apply

☑ Positive Behavioral Supports and Interventions not in place - no FBA's and BIP's

☑ RTI delaying Child Find

☑ Systemic lack of Child Find

 Amy Trail O ALL OF THE ABOVE are your districts exact systemic issues and then some
Like · Reply · 6w

 Amy Trail O NOT ONE IEP I reviewed had received Comprehensive Evaluations - ZERO real FBA's and BIP's, reevaluations did not do Speech and OT evaluations, and only ONE IEP had OT when 13 required it

 Amy Trail shared a link.
O Admin · October 27

This is when called in the VDOE for Franklin County! Alleghany Next???



ROANOKE.COM
State to investigate special education complaints in Franklin County

A group of parents dissatisfied with the school division's response reached out to state Sen. Bill Stanley, who evoked a rare systemic review

When you read this article you will see that our own story lead into complaint




THAT'S ME

 Amy Trail
Well the easiest way to bring them in for an investigation is to find evidence on a couple of children and file a systemic complaint - like I have done in Roanoke City and in Franklin County.
9:13 PM

 Amy Trail
That was exactly what was going on in Franklin County, too. We would have to gather some evidence to show the pattern of breaking specific IDEA regulations to get a investigation or find a couple of whistle blowers who will talk too. We had both in the Franklin County investigation including a School Board Member
9:22 PM

The intent for Amy Trail's letter to be read aloud in order to cause harm to a public official and an innocent child lacks humanity on all levels. What is worse is that the Chairman of the School Board was the individual reading it; without any reason, a complete violation of privacy, and the simple lack of morals. Randy Tucker if you had a concern for my use of the word, and details contained in the letter why not pick up a phone and give me a call to get my side of things...It must have been as you stated in November - the School Board will not be doing any investigations.

Steve Bennet: I hope you will navigate to Quill Accounting and Tax LLC website: www.donnietamkern.com. Please review the "Because We Care" page. It has a couple disturbing videos for you to watch that will speak volumes to why I protested and felt the January 14th meeting. I hope you are considering my recommendations to help reform this situation (elected school board members, appropriation by major category, removal of the un-spent funds policy). We can't just focus on correcting the "budget problem", we also have to focus on preventing the "budget problem" from happening again.

When I was appointed, I was given two tasks; watch the money and do not push consolidation. This person's identity will remain anonymous because I wouldn't want them to endure the flogging that I have received. I obliged. I pledged my support to Jacob Wright who became the front-man for a jointschool system and I watched the money; even found the issue on my first month as a school board member; problem solved. Yet here we sit.... Seems there is a trend of not wanting to discuss issues in Alleghany County just like in our school division.

In case you were not aware, VDOE did not say we didn't have issues; just that the issues were not within their scope of authority:

> Based upon our review of your submitted materials, we see no actionable VDOE issues within our scope of authority. Again, thank you for bringing your concerns to our attention. We consider this matter closed and will not take any further action at this time.

Sincerely,

Thomas W. Broyles, CGFM, CPA
Director of Business and Risk Management

In the end, Amy Trail bailed on Alleghany County and the families that placed hope into her and me. I was left with carrying out my duty that I swore an oath to fulfill. Would you rather read in the media and in the Virginian Review; "school board member leaves disabled children hanging and waiting on relief"? I will be communicating with the Governor to get his support in permanently fixing our composite index to its previous level; that should have never been adjusted due to our "budget problem". I was under the impression we all took the same oath of office? It's not too late to help.

Sincerely, your loyal public servant

Donnie T.A.M. Kern

School Board Member          &          Owner
Clifton Forge West District                Quill Accounting and Tax, LLC

## ALLEGHANY FIRESIDE with Donnie Kern: FACEBOOK-LIKE AND FOLLOW
## Starting May 20th
## "An outlet for the truth"-Donnie



The Respondent was soon made aware of his constitutionally protected rights after

reading a Dear Colleague Letter drafted by Seth Galanter the then Acting Assistant

Secretary of the Department of Education Office of Civil Rights on published on

April 24 2013 (below):



UNITED STATES DEPARTMENT OF EDUCATION
OFFICE FOR CIVIL RIGHTS

THE ASSISTANT SECRETARY

April 24, 2013

Dear Colleague:

The Office for Civil Rights (OCR) in the United States Department of Education (Department) is responsible for enforcing Federal civil rights laws that prohibit discrimination based on race, color, national origin, sex, disability, or age by recipients of Federal financial assistance (recipient(s)) from the Department.[1] Although a significant portion of the complaints filed with OCR in recent years have included retaliation claims, OCR has never before issued public guidance on this important subject. The purpose of this letter is to remind school districts, postsecondary institutions, and other recipients that retaliation is also a violation of Federal law.[2] This letter seeks to clarify the basic principles of retaliation law and to describe OCR's methods of enforcement.

The ability of individuals to oppose discriminatory practices, and to participate in OCR investigations and other proceedings, is critical to ensuring equal educational opportunity in accordance with Federal civil rights laws. Discriminatory practices are often only raised and remedied when students, parents, teachers, coaches, and others can report such practices to school administrators without the fear of retaliation. Individuals should be commended when they raise concerns about compliance with the Federal civil rights laws, not punished for doing so.

The Federal civil rights laws make it unlawful to retaliate against an individual for the purpose of interfering with any right or privilege secured by these laws.[3] If, for example, an individual brings

---

[1] OCR enforces Title VI of the Civil Rights Act of 1964 (Title VI); Title IX of the Education Amendments of 1972 (Title IX), Section 504 of the Rehabilitation Act of 1973 (Section 504), the Age Discrimination Act of 1975 (Age Act), and the Boy Scouts of America Equal Access Act (Boy Scouts Act). OCR also shares enforcement responsibilities with the Department of Justice for Title II of the Americans with Disabilities Act of 1990 (Title II), which prohibits discrimination against individuals with disabilities in state and local government services, programs and activities, regardless of whether they receive Federal financial assistance.

[2] The Federal courts have repeatedly affirmed that retaliation is a violation of the Federal civil rights laws enforced by OCR. *See, e.g., Jackson v. Birmingham Board of Education*, 544 U.S. 167 (2005); *Peters v. Jenney*, 327 F.3d 307, 320-21 (4th Cir. 2003); *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311 (11th Cir. 2002).

[3] *See* 34 C.F.R. § 100.7(e) (Title VI); 34 C.F.R. § 106.71 (Title IX) (incorporating 34 C.F.R. §100.7(e) by reference); 34 C.F.R. § 104.61 (Section 504) (incorporating 34 C.F.R. §100.7(e) by reference); and 34 C.F.R. §108.9 (Boy Scouts Act).

concerns about possible civil rights problems to a school's attention, it is unlawful for the school to retaliate against that individual for doing so. It is also unlawful to retaliate against an individual because he or she made a complaint, testified, or participated in any manner in an OCR investigation or proceeding. Thus, once a student, parent, teacher, coach, or other individual complains formally or informally to a school about a potential civil rights violation or participates in an OCR investigation or proceeding, the recipient is prohibited from retaliating (including intimidating, threatening, coercing, or in any way discriminating against the individual) because of the individual's complaint or participation. OCR will continue to vigorously enforce this prohibition against retaliation.

If OCR finds that a recipient retaliated in violation of the civil rights laws, OCR will seek the recipient's voluntary commitments through a resolution agreement to take specific measures to remedy the identified noncompliance.[4] Such a resolution agreement must be designed both to ensure that the individual who was retaliated against receives redress and to ensure that the recipient complies with the prohibition against retaliation in the future. OCR will determine which remedies, including monetary relief, are appropriate based on the facts presented in each specific case.

Steps OCR could require a recipient to take to ensure compliance in the future include, but are not limited to:

- training for employees about the prohibition against retaliation and ways to avoid engaging in retaliation;
- adopting a communications strategy for ensuring that information concerning retaliation is continually being conveyed to employees, which may include incorporating the prohibition against retaliation into relevant policies and procedures; and
- implementing a public outreach strategy to reassure the public that the recipient is committed to complying with the prohibition against retaliation.

If OCR finds that a recipient engaged in retaliation and the recipient refuses to voluntarily resolve the identified area(s) of noncompliance or fails to live up to its commitments in a resolution agreement, OCR will take appropriate enforcement action. The enforcement actions available to OCR include initiating administrative proceedings to suspend, terminate, or refuse to grant or continue financial assistance made available through the Department to the recipient; or referring the case to the U.S. Department of Justice for judicial proceedings.[5]

Page 3.—Dear Colleague Letter: Retaliation

OCR is available to provide technical assistance to entities that request assistance in complying with the prohibition against retaliation or any other aspect of the civil rights laws OCR enforces. Please visit http://wdcrobcolp01.ed.gov/CFAPPS/OCR/contactus.cfm to contact the OCR regional office that serves your state or territory.

Thank you for your help in ensuring that America's educational institutions are free from retaliation so that concerns about equal educational opportunity can be openly raised and addressed.

Sincerely,

/s/

Seth M. Galanter
Acting Assistant Secretary for Civil Rights

In July 2019 two ACPS employees filed complaints alleging hostile work environment against the Respondent. The Respondent with the help of counsel requested copies of the complaints and accompanying documents. The Respondent was told the complaints would be provided at the conclusion of the investigation. The investigation concluded. The complaints and accompanying documents were never provided to the Respondent. At the conclusion of the investigation, it was determined by Eugene Kotulka, Superintendent that due to the report filed by the Respondent with state officials a hostile work environment was created (below).

Mr. Donnie T. Kern
115 Church Street
Clifton Forge, Virginia 24422

Re: School Board Policies GBB and GBA/JFHA – Investigation Findings

Dear Mr. Kern:

On June 19, 2019, Alleghany County Public Schools ("ACPS") initiated a third-party investigation pursuant to School Board Policies GBB and GBA/JFHA in response to allegations from two ACPS employees that you engaged in harassment against them and created an abusive work environment. Pursuant to the School Board Policies, Dr. Larry Massie, former Superintendent of Buckingham County Public Schools, investigated the allegations. Dr. Massie completed a report of his investigation on October 1, 2019, which was received in my office on October 4, 2019.

I have reviewed Dr. Massie's investigation report. The evidence indicates that you made numerous written and oral allegations of a public nature about the two ACPS employees who initiated complaints against you. These allegations were contained in the 140-page document submitted to the Superintendent of State Police, the Auditor of Public Accounts, and the State Inspector General on December 11, 2018 and in other communications. Your accusations were outrageous and highly inflammatory in nature, and Dr. Massie's investigation revealed that they lacked any basis in fact. Dr. Massie found that your actions in making false allegations against the two ACPS employees constituted harassment and created an abusive work environment for them in violation of Policies GBB and GBA/JFHA. I agree with Dr. Massie's conclusion that Policies GBB and GBA/JFHA were violated by you with respect to both employees.

Policy GBA/JFHA provides that if I determine that it is more likely than not that prohibited harassment occurred, ACPS "shall take prompt, appropriate action to address and remedy the violation as well as prevent any recurrence. Such action may include discipline up to and including expulsion or discharge." I recognize that, as the Superintendent, I lack disciplinary authority to remove you from the School Board. As a result, I am forwarding Dr. Massie's findings to the School Board and referring the matter to a vote as to the appropriate action that ACPS will take as a result of your violation of Policies GBB and GBA/JFHA.

Please let me know if you have any questions.

Sincerely,

Eugene Kotulka
Superintendent
Alleghany County Public Schools

After the investigation concluded October of 2019 the Respondent sent

communication to members of the Alleghany County Board of Supervisors

regarding the investigation and the outcome by ACPS.  He received no response

from members of the Alleghany County Board of Supervisors. No further action

was taken.

VIA ELECTRONIC MAIL
millwork2002@aol.com

Honorable Stephen A. Bennett, Chairman
Alleghany County Board of Supervisors
6800 Rich Patch Road
Covington, Virginia 24426

Dear Alleghany County Board of Supervisors:

The Alleghany County School Board has advised its attorney and Superintendent Gene
Kotulka to speak with the attorney of Alleghany County. It is my understanding that, through this
process, the Alleghany County Board of Supervisors will consider my removal from office. I am
writing today to urge the Board of Supervisors to refrain from taking this drastic and unwarranted
option.

Throughout my career as a public servant, constitutional officer, and member of the
Alleghany County School Board, I have been dedicated to the simple mission of making our
schools a better place. I have and, so long as I am able, will fight for the rights of Alleghany
County's students, especially its most vulnerable students, and ensure that its taxpayers' dollars
are being expended appropriately. I do not deny that I submitted a report to the state police, auditor
of public accounts, and the state inspector general, containing my well-founded suspicions of
fraudulent activity. But my report on the school systems' budget and expenditures, and its
treatment of many of our most vulnerable students, was submitted solely with the best interests of
Alleghany County, its taxpayers, and its students in mind.

Rather than engage with my serious concerns regarding the school system's budget and
treatment of disabled students, Alleghany County Public Schools, through the School Board,
employees such as Fred Vaughn, Compliance Officer, and Superintendent Kotulka, and others,
conducted an investigation against me that was, in a word, unfair. I was accused of wrongdoing
and misconduct, of making "outrageous and highly inflammatory" false statements—but was told
nothing of the specific accusations against me, nor who my accusers were, nor what aspect of my
report was false and defamatory. I attempted to engage in good faith with the investigation, as you
can see for yourself in the past communications I have had with Alleghany County Public Schools'
officials, which are enclosed—but my efforts were met with little more than resistance,
stonewalling, and an overall lack of transparency at every turn.

It is my position that Alleghany County Public Schools unlawfully retaliated against me,
thereby infringing upon my First Amendment rights. Further, should the Board of Supervisors
petition for my removal from office pursuant to Virginia Code § 24.2-234, or otherwise interfere

with my duties as a duly-appointed member of the School Board, would view these actions as retaliation against me as well.

I am frustrated that I have to write this letter, that things have escalated to this level. Nevertheless, I felt it was important that the Board of Supervisors hear my side of the story, my perspective, before bringing this matter to a vote. Most of all, I would emphasize that at all times as a member of the Alleghany County School Board I have acted in good faith, with the best interests of the taxpayers and students of Alleghany County in mind. With best wishes I remain

Your loyal public servant,

Donnie J.A.M. Kern
115 Church Street
Clifton Forge, VA 24422

CC:    M. Joan Vannorsdall (joan.vannorsdall@gmail.com); Richard Lee Shull
(nbshull@aol.com); James M. Griffith (grifjame@aol.com); Matt Garten (kickma@aol.com);
Shannon P. Cox (spcox70@gmail.com); and Cletus W. Nicely (cnicely@ntelos.net).

Enclosures

The Respondent filed a complaint with the United States Department of Education Office of Civil Rights around December 2019.

June 2020 to July 2020 issues began to arise with Eugene Kotulka, Superintendent and was subsequently placed on administrative leave, he wasn't allowed to attend High School Graduation, he had to clean out his office, and turn over keys to the vehicle he used. In an attempt to benefit both parties ACPS drafted a settlement agreement by and between the School Board and Eugene Kotulka, Superintendent (below):

## AGREEMENT

This AGREEMENT is made as of this _2th at 8:14pm_ day of July, 2020, between Eugene P. Kotulka (hereinafter "Superintendent") and the Alleghany County School Board, a Virginia body politic, (hereinafter "Board").

### REASONS FOR AGREEMENT

1. The Board and the Superintendent entered into a contract dated July 1, 2017, whereby the Superintendent was employed as Division Superintendent for a period commencing July 1, 2017, and ending June 30, 2021 (hereinafter called the "Contract").

2. Under the Contract, the Superintendent would be entitled to substantial payments and benefits for the period remaining on his Contract.

3. The Board and Superintendent mutually have agreed to a date for the Superintendent's retirement earlier than otherwise contemplated in the Contract effective close of business on September 30, 2020, and to reach agreement and resolve any questions regarding his entitlement to payments and other benefits upon retirement under the Contract or otherwise.

### AGREEMENT

For and in consideration of the mutual promises and commitments specified herein, the parties agree as follows:

1. Retirement. Upon execution of this Agreement, the Superintendent will retire as Division Superintendent of the Alleghany County Public Schools effective as of the close of business on September 30, 2020. A copy of the Superintendent's letter of retirement is attached hereto as Exhibit A.

    (a) The Superintendent will remain on administrative leave until the effective date of his retirement.

    (b) The Superintendent will remove all personal items from his office and return any Board property to the Clerk of the Board by July 20, 2020 at 12:00 p.m.

    (c) The Superintendent's automobile entitlement will end on July 20, 2020 at 12:00 p.m.

2. Payments. The Superintendent shall be entitled to the following payments from the Board:

    (a) The Board will pay the Superintendent his current salary until the effective date of his retirement.

    (b) The Board will pay the Superintendent $22,553.71 for unused annual leave.

(c)     The Board will pay the Superintendent $2088.75 for unused accumulated sick leave in Alleghany County Public Schools, earned pursuant to the Board policy in effect on that date.

(d)     The Board agrees to pay the premium for the Superintendent for family coverage in the Board-sponsored health insurance program through September 30, 2020.

(e)     Notwithstanding any prior Agreement to the contrary, the payments provided for in subparagraphs (a) through (d) above constitute the total and complete financial obligation to the Superintendent on the part of the Board, and the Superintendent shall not be entitled to any further payments from the Board in any amount related to his employment by the Board.

3.   Non-Disparagement.  The parties agree not to disparage, criticize, or speak negatively of the other. This Agreement is entered into in good will for the mutual benefit of the parties, and the Superintendent and the Board agree to treat all communications with each other and with the public in that positive light. Other than official action required by state law, the parties agree that the only public statement to be issued by either party will conform to the statement attached hereto as Exhibit B.

4.   Confidentiality.  The Superintendent represents and agrees that he will keep the terms, conditions, covenants, and existence of this Agreement strictly confidential, and will not disclose, or cause to be disclosed, any information concerning this Agreement that is not made generally available to the public as required by law to any person except his immediate family members, legal counsel, and accountant, and then only after such persons have agreed not to disclose any facts concerning the settlement. The Superintendent further agrees not to disclose, or cause to be disclosed, any information concerning this Agreement to any media or publishing entity. Notwithstanding the foregoing, the Superintendent's obligation of confidentiality shall not extend to any disclosure mandated by law, order by a court of competent jurisdiction.

5.   Superintendent's Cooperation.  Superintendent recognizes that, because of his position with the Board, it is important that the Board's employees and the public perceive that his retirement is a mutually desirable and positive event. This Agreement is entered into in good will for the mutual benefit of the parties, and the Superintendent agrees to treat all communications with the Board and with the public in that positive light. From the effective date of the Agreement until 5:00 p.m. on September 30, 2020, Superintendent agrees to cooperate with the Board to resolve pending litigation or state and federal complaints arising during the Superintendent's employment about which the Superintendent has knowledge. The Board agrees to announce publicly only that the Superintendent is retiring as set forth in Exhibit B. The Board will make no other statements regarding the end of Superintendent's employment except as set forth herein.

6.   General Release.  In consideration for this Agreement and the benefits accorded to him hereunder, Superintendent agrees, for himself and his heirs, representatives, successors and assigns, as follows: Superintendent has retired from employment with the Board effective September 30, 2020. Superintendent waives, releases and forever discharges the Board and its employees and agents, from any and all claims, known or unknown, that he has or may have

relating to or arising out of his employment with the Board and the cessation thereof, including but not limited to any claims for any cash payments except as provided herein (but excluding reimbursement for expenses accrued and documented in accordance with Board policy), any claims of wrongful discharge, breach of express or implied contract, fraud, misrepresentation, defamation, liability in tort, claims of any kind that may be brought in any court or administrative agency, any claims under Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Employee Retirement Income Security Act, or any other federal, state or local law relating to employment, employee benefits or the termination of employment, or any other claim arising out of or relating to Superintendent's employment, excepting only his benefits under the VRS retirement plans, the provisions of this Agreement , and Article XII, "INDEMNITY", of the July 1, 2017, Contract, which are not waived or released, and which by mutual consent of the parties survive this Agreement and remain in full force and effect.

The Superintendent recognizes that in signing this Agreement, including its release of claims, he is waiving his right to pursue any and all claims under the Age Discrimination in Employment Act, 29 U.S.C. § 626 et seq. ("ADEA"), arising prior to the date that he executes this Agreement. The Superintendent acknowledges that he has been given the opportunity to consider this General Release for at least twenty-one (21) days, which is a reasonable period of time, and that he has been advised to consult with an attorney in relation thereto prior to signing this General Release. The Superintendent further acknowledges that he has had a full and fair opportunity to confer with his attorney, that he has carefully read and fully understands all of the provisions of the General Release, and that he has executed it of his own free will, act and deed without coercion and with knowledge of the nature and consequences thereof. If the Superintendent executes this General Release in less than twenty-one (21) days, he acknowledges that he has thereby waived his right to the full twenty-one (21) day period. For a period of seven (7) calendar days following the execution of this General Release, the Superintendent may revoke this General Release by delivery of a notice revoking the same within that seven (7) day period to Patrick T. Andriano, Reed Smith LLP, Riverfront Plaza – West Tower, 901 E. Byrd Street, Suite 1900, Richmond, VA 23219, pandriano@reedsmith.com. If the Superintendent does not advise Mr. Andriano that he revokes this General Release within the revocation period, the General Release shall become effective and shall be forever enforceable. The Superintendent understands that if he revokes this General Release, he will not be entitled to the consideration set forth in this Agreement , including the consideration in Paragraph 2 and its subparts, and that if he has received such consideration, he agrees to repay the Board for all sums paid to or on his behalf.

    7.  Board's General Release. In consideration for the promises and obligations stated herein and the Superintendent's resignation, the Board, for itself and its successors, to the extent permitted by law, waives, releases and forever discharges the Superintendent from all claims, known or unknown, that Board may have or may hereafter discover against Superintendent arising out of or related to his employment and the discharge of his duties as Superintendent.

    8.  No Admission. It is understood and agreed that the Board has admitted no liability for the benefits provided herein or for any other benefits other than those provided by contract or Board policy. The Board and the Superintendent have entered into this Agreement for the

purpose of maintaining an amicable and cooperative relationship between Superintendent and the Board, and to eventually separate in a positive and equitable manner.

9. Entire Agreement.

(a) The parties understand and agree that all terms of this Agreement are contractual and are not a mere recital, and represent and warrant that they are competent and possess the full and complete authority to covenant and agree as herein provided.

(b) Superintendent understands, agrees, and represents that the covenants made herein and the releases herein executed may affect rights and liabilities of substantial extent and agrees that the covenants and releases provided herein are in his best interest. Superintendent and Board represent and warrant that, in negotiating and executing this Agreement, they have consulted with competent counsel or other representatives of their choosing concerning the meaning and effect of each term and provision hereof, and that there are no representations, promises or agreements other than those expressly set forth in writing herein.

(c) The parties have carefully read this Agreement in its entirety; fully understand and agree to its terms and provisions; intend and agree that it is final and binding and understand that, in the event of a breach, either party may seek relief, including damages, restitution and injunctive relief, at law or in equity, in a court of competent jurisdiction.

10. Attorneys' Fees. Each party shall be responsible for his or its own attorneys' fees in connection with this Agreement.

IN WITNESS WHEREOF, and intending to be legally bound, the parties have executed the foregoing Agreement this ___ day of July, 2020.


7/20/2020 at 5:14 pm
Date

Eugene P. Kotulka


ALLEGHANY COUNTY SCHOOL BOARD:


Date                                    Jacob L. Wright, Chairman


Date                                    Danielle I. Morgan, Vice-Chairwoman

_____          _____
**Date**                                  Gerald E. Franson


_____          _____
**Date**                                  Donnie T. Kern


_____          _____
**Date**                                  R. Craig Lane


_____          _____
**Date**                                  Jennifer S. Seckner


_____          _____
**Date**                                  Randall S. Tucker


## Exhibit B

The Alleghany County School Board and Mr. Gene Kotulka jointly announce that Mr. Kotulka has given notice of a decision to retire on September 30, 2020, a decision the School Board acknowledges and accepts. The School Board expresses gratitude for Mr. Kotulka's years of service and wishes him well in retirement. Mr. Kotulka's contract with the School Board will be deemed terminated by mutual consent on his announced retirement date.

The Respondent objected to the use of the settlement agreement. The Respondent's objection to Jacob Wright, Chair and Danielle Morgan Vice Chair of ACPS is below.

August 3rd 2020

Alleghany County School Board

Peers,

Between July 22 to August 2, 2020 I have carefully reviewed the agreement between the Alleghany County School Board and Superintendent Eugene Kotulka. Upon my review I have a concerning self-reflection involving signing this agreement. My review in summary, indicated to me that the School Board is:

- Paying $24,642.46 in unused Personal Leave and Sick Leave. Reviewing school board policies this seems to be more payout of Personal Leave and Sick Leave than what the Superintendent may have earned (or a combination of both).
- Paid Administrative Leave along with current employment benefits during the Administrative Leave period until the Superintendent's retirement date.
- Agreeing to "Non-Disparagement" to the extent required by law in the state of Virginia to not disparage, criticize, or speak negatively of each other, to communicate publicly in a positive light, and to reference a three-sentence retirement statement when required.
- Agreeing to "Confidentiality" of the agreement to the extent required by law.
- Agreeing to receive "Cooperation of the Superintendent" to help with ongoing state and federal complaints and litigation matters up until his retirement date in exchange for communication pertaining to the Board that will be revered as positive in the public light.
- Agreeing to a "Liability Release" - so that the School Board and Superintendent are never held accountable for their improprieties or that these improprieties are never known as to not erode the public trust.
- Indemnity (Under Section XII of the July 1, 2017 Contract) indefinitely forever.

All of which were supposedly negotiated in good faith and with mutual consideration.

On July 6, 2020 the School Board discussed just providing a $30,000 lump sum payment and a "gag order" (in this agreement it's called a Non-Disparagement clause). This was supposedly agreed upon by the Superintendent then. The difference between the July 6, 2020 agreement and the current July 20, 2020 agreement; other than the 14 days lapse of time, indicates that the School Board has positioned itself in a position of weakness instead of a position of strength. This position realignment I opine, originates from the need of self-preservation and dismissal of accountability in contrast to mutual consideration.

As you may or may not be aware; I have filed a complaint with the United States Department of Education Office of Civil Rights which was promulgated by retaliatory actions of this School Board due to my attempt to secure the civil rights of our most vulnerable children. This complaint at this time is still under investigation. I have had my legal team send correspondence to this School Board in-regards to my own child's experience of intentional discrimination and the grievous denial of a free and appropriate education which to this day is still **unresolved** [emphasis added]. This correspondence was shared with this School Board. My family and I have extraneously suffered due to the shenanigans of this School Board financially, educationally, and emotionally.

Furthermore, School Board policy does not require that I sign this agreement, my signature of acceptance and agreement is not needed. The School Board has never valued my opinion, if the School Board did value my opinion the Superintendent Eugene Kotulka would have been terminated in November of 2018 or in July 2020 along with other individuals that have made some really bad choices. The School Board would be incorporating budgetary best practices recommended by federal agencies and the Virginia School Board Association so that we are not asking for millions in funds that go unspent each year. The School Board's, Special Education Advisory Committee would be robust and affluent so that all of our community's children receive a free and appropriate education. My two children would be currently enrolled in Alleghany County Public Schools receiving a free and appropriate education instead of being homeschooled like the other 107 students which currently is costing our community approximately $650,000 each year.

In addition, I believe this agreement is an interference and sequestration of my constitutional rights and ability to seek governmental redress which I am currently in the process of exercising. I view this agreement as an intentional and retaliatory effort by this School Board. This agreement is repulsively insulting. The School Board's best option is to remove Superintendent Eugene Kotulka, because retaliation should never be tolerated. Superintendent Eugene Kotulka deserves no less than to be accountable for his actions, along with others that were involved. This agreement is nothing more than a safety mechanism of self-preservation for the Superintendent, and current members of this School Board; excluding me.

If Superintendent, Eugene Kotulka felt his "integrity" was dishonored leaving him with the only option of resigning from office (which he publicly did on June 22, 2020) then there would be no need of such an agreement. If the School Board is willing to remunerate over $50,000 in salary and benefits (some of which were never earned) this Superintendent should be thrilled with leaving. Why is there a need for the bells and whistles in this agreement which is self-evident to silence and protect everyone' interest excluding mine. The provisions within this agreement are an apparent conflict of interest.

Under the Code of Virginia §22.1-65 it states:

> "A division superintendent may be assessed a reasonable fine, suspended from office for a limited period or removed from office by either the Board of Education, upon recommendation of the Superintendent of Public Instruction or the school board of the division for sufficient cause. A division superintendent may appeal to the appropriate circuit court any decision of the Board of Education or school board to assess a fine against him or to suspend or remove him from office and shall be entitled to a trial de novo on such appeal of whether there was sufficient cause therefor"

The School Board should enact §22.1-65 under the code of Virginia. I have presented amazing support that could be used for the Superintendent's removal to the United States Office of Civil Rights which is approximately 500 plus pages including audio. The School Board could rely on this information alone. I will gladly testify in an administrative or judicial hearing.

It was the overall consensus of this School Board wanting him removed...why the need for an agreement? If the School Board enacted §22.1-65 the School Board would not have to pay out anything. We would save approximately $50,000. As we all have learned in the past two years; and I opine the

wise words of Jacob Wright, Chairman "Donnie was right about things that we didn't know". I am right about this.

This agreement is no more than a "settlement" as a peer on this Board has described it.

How do you think it made me feel when Fred Vaughn, Director of Human Resources for the School Board came to my workplace, forcing a complaint letter in my hand and coercing me to go visit an interrogator the very next day, emailing me, calling me...non-stop harassment?

How do you think it made me feel when Dr. Elizabeth Heath told my wife that she didn't have to be invited to a meeting to discuss 504 plan accommodations for our child? Most recently on July 20th 2020 during closed session, once again out of concern for the security of the civil rights for our most vulnerable children; I reference my own personal experience with a 504 plan. I indicated that my experience as a parent with Dr. Elizabeth Heath and the 504 plan was not great. She replied that "I am not aware of any plan". How do you think this made me feel?

I will tell you how I feel. I opine that this School Board may have a systemic issue with Child Find [emphasis added]. In case you were not aware, you provide individualized instruction through an Individual Education Plan (IEP) and not a 504 Plan. You may want to fix that. I am not sure at this point if Amy Trail's statement about this School Board's mistreatment of an African American student being placed in a "closet" is completely without merit.

You say this agreement was done in mutual consideration? Let me share with you how I feel. I think not.

On behalf of all my constituents who have been wronged by the Alleghany County School Board I unequivocally object to this agreement. Based on the information I have provided you and under good conscious I am unable to sign this heinous agreement indicating my agreeing or approval of it or any of its binding provisions contained within it.

This statement is made without the need for reply or continued discussion. With best wishes I remain

Sincerely,

Donnie T.A.M. Kern
1/7 Alleghany County School Board Member
115 Church Street
Clifton Forge, Virginia

Prior to the departure of the Eugene Kotulka, Superintendent for ACPS the Respondent received several disturbing phone calls. One was specific to the trying to convince the Respondent to approve the budget that would deny employees at ACPS a raise. In this conversation he disclosed to the Respondent:

"Just remember when you're looking at this ok....uh....(long pause).....**I still think you're a good board member ok, and I would say that if I was a regular citizen**, I know we don't always agree on things and that's ok. Whether or not my contract plays a role in this is not relevant to me, I know its relevant to others. It's a minor thing, it could be a major thing. If we take the raise their (Alleghany County Board of Supervisors) going to cut us. I don't have any control over that, you don't have any control over that alright. Could they be bluffing? Sure, but I don't think so based on the conversations that I have had, Randy's had, Jacob's had, and...and Jennifer's had"

In addition, another phone conversation the Respondent had with Eugene Kotulka, Superintendent prior to departure was Eugene Kotulka trying to convince the Respondent to support returning $500,000 up to $1,000,000 back to the Alleghany County Board of Supervisors. Eugene Kotulka, Superintendent states:

"It looks like we will have about $500,000 or so left over at the end of the year. I had long talks with John Lanford (Alleghany County Administrator) and instead of cutting our budget my recommendation will be to have that $500,000 up to ten-hundred thousand ($1,000,00,000) turn that over to the board of supervisors"

Alleghany County and City of Covington was contemplating a joint school division. The Respondent didn't like the idea because it did not provide for elected school board members. The Respondent in several capacities and through the exercise of the Respondent's constitutional rights of speech, redress and assembly, among other things submitted a published article with the Virginian Review (Shown Below):

**Paid Advertisement**

Greater Alleghany and Covington Community and Editor:

"I am not asking what is going on, I am just telling you whatever it is it can't be right, so you might want to fix that. I don't want to come down to that school and find out she/he is still in a closet somewhere" as stated by Amy Trail to Dr. Elizabeth Heath, Director of Special Education for Alleghany County Public Schools pertaining to the scholastic conditions within the Alleghany County School system in-regards to the treatment of an African American student.

Amy Trail was a Special Education consultant for the Alleghany County School Board. Dr. Elizabeth Heath opined that Amy Trail was "the support that we need but don't have the resources to provide". As it was told to me by an employee, this same African American student one day was carrying gifts and when the student was asked who the lucky person was that would be receiving these gifts, the student identified the individual responsible for placing them in the "closet" as described by Amy Trail and stated: "I just want she/he to like me".

Due to this student's situation and others coupled with aggravated circumstances I made the conscientious decision to ask for an investigation from state officials. To this day no investigation has ever occurred. I was told the situation was the responsibility of the appointed Alleghany County School Board. What came next was Dr. Elizabeth Heath providing a defamatory letter to be read-aloud like a story book detailing my own child's substandard experience with the Alleghany County School Board. The Alleghany County School Board then requested $60,000 from the Board of Supervisors for legal fees so the School Board could have their attorney's "Deal with Mr. Kern" as stated by Randy Tucker, Chairman. I publicly asked for diplomacy in this newspaper after this was stated. Instead of being met with compassion and understanding the door of vengeance was opened and retaliation ensued and unfortunately is still currently ongoing. The United States of America is now reviewing approximately eleven incidents of retaliation by the Alleghany County School Board.

The Alleghany County School Board epically failed to deal with me just as they have failed so many of our most vulnerable children in providing a free and appropriate education. I felt inclined to write this letter because of the upcoming vote on the joint school system. I feel I would be doing a disservice to our most vulnerable children, their families as well as the good people of Covington had I stayed silent.

This joint school system forgoes the opportunity to elect members of the new school board created under this proposal that will be voted on. The promise of self-governance is owed to each citizen and instead of fulfilling this promise endowed by the Declaration of Independence and correcting the mistakes of the past we are going to continue on this reckless path of appointment. I have been on the Alleghany County School Board for two years. I do have lots too learn as Randy Tucker mentioned in our August 17 2020 meeting.

I would like to provide a small reflection of what I have learned thus far since my appointment on the Alleghany County School Board. Appointed and administrative officials are absent any accountability for their actions or inactions. The Board of Supervisors wants the School Board to return $500,000 that was budgeted but never spent. The Board of Supervisors has stated that if we do not return this money, they will cut the exact amount from our 2021-2022 budget. The Board of Supervisors threatened to cut the School Board's budget if we provided a raise to staff in the 2020-2021 budget. An impermissible amount of $700,000 in class room instruction funds were unspent for the 2019-2020 fiscal year; yet we can't equalize staff salaries at the cost of $460,000. Despite having a plethora of unspent funding year-after-year, the School Board is beseeched in what it can and cannot do with it. The School Board currently has no parliamentary procedures in conducting board meetings. We do not always follow the Freedom of Information Act. No consistency in appointing mandated committees; example the school board policy mandates we have a Budget Committee, this committee is appointed during the reorganization of the school board. This Budget Committee has yet to be appointed in 2020. I offered to serve on it, and utilize my accounting skills that I obtained in completing my Master's Degree in Accounting and fix all the budget problems but when the time came to appoint, Jacob Wright decided not to and moved on to the next agenda item. I abstain from voting on financial spending due to not receiving adequate information to ascertain if the School Board is adhering to its mandated budget on a monthly basis. I do not receive information regarding assets and liabilities enabling me to understand the school board's financial condition. How am I supposed to approve the payment of bills, if I am not provided information to know if we overspent or not? The School Board and Board of Supervisors in approving the 2020-2021 budget will magically purchase a $90,000 school bus with $75,000. They also approved the reduction of $120,000 in speech services despite having an increase of students bringing the total to 67 students that would require these services. It was explained to me that we didn't have enough money. The School Board is about to approve the return of $500,000 to the Board of Supervisors that could have been used to correct these deficiencies. I was informed during the August 17th public meeting that the Joint Services Committee will be appointed by the Superintendent versus the School Board in an effort to begin having meetings that are not open to the public.

Three months into my term I sat in a closed session meeting where "He who shall not be named" sent the police after a child advocate for a credentialing snafu. "He who shall not me named" encouraged our School Board to eliminate a position because it was held by an employee that was described as a "major ADA compliance issue, a major, major one". As a parent I asked my school system to help accommodate my child yet I am told we don't have money to do it with. Which is supportive due to the rationale of Randy Tucker indicating that if a "kid needs a dog, were not supplying the dog" during a budget meeting. In case you were not aware in the last six years the home school population has increased 33% that's a total of 107 children that are currently homeschooled. I learned the hard way of why; now my two children have been homeschooled for two years now. The homeschool population creates an unrealized revenue source of approximately $650,000 because these families do not enroll them in our school system

This method of appointment has to end, God willing I will see that it does, as I have made preparations to collect signatures beginning in January to have a referendum placed on the ballot in 2021. I have strived to be honest, accountable, and transparent to the public. I created a Facebook page in 2019: Alleghany Fireside w/ Donnie Kern to do just that. If anyone want to assist with the referendum project please reach out. Let's make history together.

I commend the efforts of the joint committee in putting the joint school proposal together. I support working together and achieving economies of scale. I think Mr. Dressler and Mrs. Zeek would have been good participants to have at the table as they have brought up very good scenarios that are not explained in this proposal. I feel responsible for this effort, so I feel I owe you why I will not be voting in favor of it. I do not believe having an appointed school board is unacceptable. I recommend that the joint committee stay the plan until the proposal voted on with an elected school board. As it was suggested to me by Senator Creigh Deeds, you should request a legal opinion from the Virginia Attorney General if the plan can be proposed with having an elected school board.

Good people of Covington, if you want the administrative and appointed leadership that I have had to learn about over the course of two years, then you are about to get it. However, I will not be held responsible for giving it to you. You do not deserve it, no one does. You will have to get it from someone else. I refuse to expose another family, student, or staff member to the treatment that others have received by the Alleghany County School Board, I will not condone this treatment now or in the future. I am voting no on the joint school plan as it is currently being proposed. If you want to attempt to stop this machine, I recommend collecting 301 signed letters indicating disapproval, make a copy, then send them to Senator Creigh Deeds and Delegate Terry Austin to show there isn't community support. Have individuals that show up during the vote to sign such a letter. Pack the house when the vote occurs with your governing bodies and tell them how you feel. You can also come show support with your presence in silence or through applause. If you want to say something and don't know what to say you, can read this letter. It may incite tears, anger, or vomiting, something I experience each time I think about its contents. Invite WDBJ7. This letter is intended to seek governmental redress in an attempt to secure the civil rights our most vulnerable children protected by such rights. It is a violation of federal law to retaliate against an individual that attempts to secure the rights of those that are protected by such rights. With best wishes I remain, always



**Donnie T.A.M. Kern, M.S.A., EA**
**School Board Member-ACPS**
**Clifton Forge West District**
**115 Church Street**
**Clifton Forge, Virginia 24422**

*Your loyal public servant*
*Donnie T.A.M. Kern*

On September 9 2020, George "Matt" Garten the new Chairman for the Alleghany
County Board of Supervisors in replacing Steve Bennett who became the Vice
Chairman stated at the conclusion of a joint meeting between the Alleghany
County School Board and the Alleghany County Board of Supervisors
(https://www.youtube.com/watch?v=_B-mjZqT5sU&t=46s):



"…Last week Virginian Review
published a paid piece written by
school board member Donnie Kern.
Those of you who read the piece
**would agree with me that it
contained a number of serious
allegations and references. The
allegations imply that numerous
officers, representatives, employees of Alleghany County and Alleghany
County School Board have engaged in conduct, <u>if true would be
considered illegal and unethical</u>**…We should begin by holding a meeting
and summing Mr. Kern to testify before us under oath to eliminate and
clarify allegation made in his written paid piece"

On October 6 2020 the Alleghany County Board of Supervisors held a regular meeting. The meeting agenda had Jacob Wright, Chairman of the ACPS providing a presentation on legal fees. Steve Bennett stated during the meeting (https://www.youtube.com/watch?v=rX1Bo3yZO3w):



> "We heard from Mr. Kern, and we heard from you (Jacob Wright) it's been pertinent. the best way I know to sum it up is either **our school system has a big problem or Mr. Kern has a problem**. We need to figure out which way it is. We are going to have to get into this. It's one way or the other"

The Respondent contests that his experience as it was shared within the published letter is accurate. The Respondent affirms that Amy Trail is the only individual who has significant knowledge of the issues within ACPS. Amy Trail admitted to the Respondent she had gathered enough evidence to file a systemic complaint. The Respondent is unaware if the Alleghany County Board of Supervisors has ever investigated Amy Trail's findings.

On October 27 2020 the Respondent attends a hearing sworn under oath with

members of the Alleghany County Board of Supervisors.  Jim Guynn states during

the opening of the hearing:

```
will be glad to take a break.  We're not
here to try to -- we don't have a rubber
hose and we don't have a big, bright light
on you or anything else.  We're just trying
to get to figuring out what is going on
with our School Board and what is going on
```

Jim Guynn of Guynn, Waddell, Carroll, & Lockaby, is counsel for the Alleghany

County Board of Supervisors. Jim Guynn assisted members of the Alleghany

County Board of Supervisors in filing a petition under the penalty of perjury on

December 2 2020. The petition contained multiple false statements which were

also known to be false by Jim Guynn and members of the Alleghany County Board

of Supervisors when the petition was filed. The following have been made aware

the Alleghany County Circuit Court, the Honorable Judge Ed Stein, the Honorable

Clerk of Court Debra Byer, and the Commonwealth of Virginia on August 10 2021

when the Respondent filed a motion for continuance.

Below is the petition filed by the Alleghany County Board of Supervisors under

the penalty of perjury on December 2 2020.

VIRGINIA:

IN THE CIRCUIT COURT OF ALLEGHANY COUNTY

BOARD OF SUPERVISORS OF       )
ALLEGHANY COUNTY,             )
                             )
        Petitioner,           )
                             )
v.                            )       Case No. CL-20-827
                             )
DONNIE T. A. M. KERN,         )
Serve: 115 Church Street,     )
Clifton Forge, VA 24422       )
        Respondent.           )

## PETITION FOR REMOVAL PURSUANT TO VIRGINIA CODE § 24.2-234

For its petition to remove Respondent Kern from the Alleghany County School Board, the Board of Supervisors of Alleghany County states as follows:

1.     The Board of Supervisors of Alleghany County (hereinafter, "Board of Supervisors") appointed Kern to the Alleghany County School Board as representative of the Clifton Forge West District for a term beginning July 1, 2018.

2.     On several occasions after he assumed office as a school board member, Kern has referred to special needs students as "retards."

3.     On several occasions Kern has falsely stated that school officials locked a special needs student in a closet and that the student later brought presents to win favor with special education personnel at his school.

4.     Most recently, Kern made the false statement about locking a special needs student in a closet in an advertisement he placed in *The Virginian Review.* Kern has admitted that he made no effort to determine the truth or falsity of the statement prior to publishing it.

5.     In publishing the story about the special education student who was allegedly locked in a closet, Kern exhibited a reckless disregard for the falsity of the statement and

defamed the director of special education for Alleghany County Public Schools and other school employees.

6. Since his appointment to the school board, Kern has engaged in behavior toward school division staff and administration that prompted a member of the school administration to file a complaint of a hostile work environment as a result of Kern's actions.

7. Pursuant to policy, the school board retained a third party to investigate the hostile work environment allegation.

8. Kern refused to participate in the investigation even though it was mandated by school board policy.

9. The third party neutral found that Kern indeed created a hostile work environment for the administrator.

10. Kern's actions since the Board of Supervisors appointed him to the school board constitute a vendetta fueled by Kern's belief that the school system has somehow mistreated his child or children.

11. Kern has made false and baseless complaints of illegalities and corruption at Alleghany County Public Schools that have disrupted the work of the school administration and cost the school division thousands of dollars in legal fees that were otherwise unnecessary.

12. Kern's actions constitute neglect of duty, misuse of office, and incompetence in the performance of his duties.

13. Kern's neglect of duty, misuse of office, and incompetence in the performance of his duties have had a material adverse effect upon the conduct of the school board.

WHEREFORE, the Board of Supervisors of Alleghany County respectfully requests that this Court issue a rule to show cause why Respondent Kern should not be removed from the

Alleghany County School Board in accordance with the procedures set forth in Virginia Code

§ 24.2-235 and remove Respondent Kern from the Alleghany County School Board.

BOARD OF SUPERVISORS OF ALLEGHANY
COUNTY

By: _____
Of Counsel

Jim H. Guynn, Jr. (VSB #22299)
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, VA 24153
Phone: 540-387-2320
Fax:    540-389-2350
jimg@guynnwaddell.com
Counsel for Alleghany County Board of Supervisors

Respondent's counsel (at the time) on December 8 2020 responded to the

Alleghany County Circuit Court in response to the petition requesting a jury trial

among other things under Virginia Code §24.2-237. The petition response states

> "In the Petition, the Board of Supervisors advance a number of allegations
>
> against Mr. Kern, all of which Mr. Kern intends to vigorously contest"

In addition, it states:

> "Mr. Kern reserves his right to file [sic] a written response to the Rule to
>
> Show cause"

Below is the motion filed by the Respondent's counsel at the time.

**VIRGINIA:**

**IN THE CIRCUIT COURT FOR THE COUNTY OF ALLEGHANY**

| | | |
|---|---|---|
| **BOARD OF SUPERVISORS OF** | ) | |
| **ALLEGHANY COUNTY,** | ) | |
| | ) | |
| Petitioner, | ) | **Case No. CL20-827** |
| | ) | |
| v. | ) | |
| | ) | |
| **DONNIE T. A. M. KERN,** | ) | |
| | ) | |
| Respondent. | ) | |

## MOTION FOR JURY TRIAL PURSUANT TO VIRGINIA CODE § 24.2-237

COMES NOW the Respondent, Donnie T. A. M. Kern ("Mr. Kern"), by counsel, and hereby files this motion to demand a jury trial as provided by Virginia Code § 24.2-237. In support thereof, Mr. Kern states as follows:

1. Mr. Kern is a member of the Alleghany County School Board ("School Board"), having been appointed to that position by the Alleghany County Board of Supervisors ("Board of Supervisors") on July 1, 2018, for a four-year term.

2. On December 2, 2020, the Board of Supervisors filed a petition to remove Mr. Kern from office pursuant to Virginia Code § 24.2-234 (the "Petition").

3. In the Petition, the Board of Supervisors advance a number of allegations against Mr. Kern, all of which Mr. Kern intends to vigorously contest.

4. On December 3, 2020, this Court entered a Rule to Show Cause, requiring as follows: "It is therefore ordered that the Respondent appear in the Courthouse of the Circuit Court of Alleghany County, on Monday, December 14, 2020, at 3:00 p.m., to show cause why he should not be removed from office."

5.      Virginia Code § 24.2-235 governs the procedure of petitions brought under Virginia Code § 24.2-234. It provides: "Upon return of the rule duly executed, unless good cause is shown for a continuance or postponement to a later day in the term, the case shall be tried on the day named in the rule and take precedence over all other cases on the docket."

6.      Virginia Code § 24.2-237 further governs the procedure of petitions brought under Virginia Code § 24.2-234. It provides, in pertinent part: "Any officer proceeded against shall have the right to demand a trial by jury."

7.      Mr. Kern invokes his right under Virginia Code § 24.2-237 and demands a trial by jury with respect to the Petition.

8.      Because a jury must be convened, good cause is shown for a continuance or postponement to a day later than December 14, 2020.

9.      Mr. Kern therefore respectfully requests that this Court enter an Order granting Mr. Kern's demand for a jury trial and continuing trial in this matter to a later date for a jury trial.

10.     Mr. Kern reserves his right to file to a file a written response to the Rule to Show Cause.

For the reasons stated above, Mr. Kern respectfully requests that this Court enter an Order granting Mr. Kern's demand for a jury trial and continuing trial in this matter to a later date.

Respectfully submitted,

DONNIE T. A. M. KERN

By:                  
Of Counsel

John P. Fishwick, Jr., Esquire (VSB #23285)
John.Fishwick@fishwickandassociates.com
Carrol M. Ching, Esquire (VSB # 68031)
Carrol.Ching@fishwickandassociates.com
Daniel J. Martin, Esquire (VSB #92387)

Daniel.Martin@fishwickandassociates.com
Fishwick & Associates PLC
30 Franklin Road SW, Suite 700
Roanoke, Virginia 24011
(540) 345-5890 Telephone
(540) 345-5789 Facsimile

*Counsel for Respondent*

## CERTIFICATE OF SERVICE

I, John P. Fishwick, Jr., do hereby certify that a true and correct copy of the foregoing was

sent via first-class and electronic mail to

Jim H. Guynn, Jr.
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, Virginia 24153
jimg@guynnwaddell.com

on this the 8 day of December, 2020.

John P. Fishwick, Jr.

Respondent questioned the Honorable Judge Ed Stein's involvement in judicating the case. Judge Ed Stein prior to his term on the Alleghany County Circuit Court which began on July 1 2019 was the Alleghany County Commonwealth Attorney. Ed Stein in his role as a Commonwealth Attorney handled many cases involving the Alleghany County Public Schools. In fact, in the fall of 2018 Eugene Kotulka, Superintendent disclosed to school board members that he asked the Commonwealth Attorney (Ed Stein) to investigate a child advocate and the family. This family was Victoria Graybill, this fact was confirmed by Victoria Graybill during the conversation on November 17 2018.

Prior to, Victoria Graybill filed an OCR complaint against Alleghany County Public Schools, but subsequently dropped it due to a mediation agreement. This investigation into Victoria Graybill years later that was prompted by Eugene Kotulka, and with support by Ed Stein could be deemed retaliatory and a civil rights violation. In anonymity the situation was described in the publication drafted by the Respondent.

On January 27 2020, Respondent's attorney sent correspondence questioning Honorable Judge Ed Stein's potential conflict in continuing as a judge. No Response was provided to the Respondent. The letter to Ed Stein is below.



John P. Fishwick, Jr.

Telephone: 540.345.5890
Facsimile: 540.345.5789

john.fishwick@fishwickandassociates.com
www.fishwickandassociates.com

**FISHWICK & ASSOCIATES** PLC

Professional Arts Building
30 Franklin Road
Suite 700
Roanoke, VA 24011

Mailing Address:
P. O. Box 749
Roanoke, VA 24004

January 27, 2020

Hon. Edward K. Stein
Alleghany County Circuit Court
266 West Main Street
Covington, VA 24426

   Re: Board of Supervisors of Alleghany County v. Donnie T. A. M. Kern
     Case No.: CL20-827

Dear Judge Stein:

  As you know, we represent Donnie Kern in the above referenced matter. Ann Gardner, the current Commonwealth's Attorney for Alleghany County, has recused herself from prosecuting this case on the basis that doing so "would constitute a conflict of interest for the Alleghany County Commonwealth's Attorney's office." Our client is a current Alleghany County School Board member, and it is his understanding that matters involving the School Board have come before the Commonwealth's Attorney's office in the past. He has asked us to make an inquiry about whether or not this presents a conflict for you, either as a Circuit Court Judge or in your former position as Alleghany County Commonwealth's Attorney. Thus, I am requesting guidance from you on the issue of a possible conflict, and if you agree that a conflict exists, how best to proceed with this matter.

  Thank you for your attention to this matter. I look forward to hearing from you.

  With kind regards, I remain

      Very truly yours,

      Fishwick & Associates PLC

      John P. Fishwick, Jr.

March 3 2020 a hearing was held to discuss the motion for Jim Guynn to be appointed as special counsel to the Commonwealth of Virginia as mandated by Virginia Code to carry out the petition filed by the Alleghany County Board of Supervisors. To no avail by the Respondent and counsel Judge Ed Stein appointed Jim Guynn as special counsel ignoring the statutory requirement that the Virginia Code requires that only the Commonwealth Attorney carry out the petition.

March 11 2020 another hearing was held to discuss a subpoena sent by the Respondent's counsel requesting documents. It was indicated by Jim Guynn that the Alleghany County Board of Supervisors **would not be turning over any documents because members of the Alleghany County Board of Supervisors were not going to be testifying**. Counsel (at the time) for the Respondent indicated they should not have signed the petition under penalty of perjury.

Jacob Wright current Chairman for the Alleghany County School Board was up for reappointment in June 2021. The Respondent in his capacity as a candidate for the Alleghany County Board of Supervisors emailed members of the Board of Supervisors along with the administrator and the clerk a letter regarding Jacob Wright's appointment via pdf. PDF of the letter below:



May 31, 2021        **FOR COMMUNITY ● FOR FAMILY ● FOR YOU**

Steve Bennett
**Greg Dodd, Clifton Forge West District Incumbent**
George Mathew Garten, Chairman
Cletus Nicely
James Griffith, Vice Chairman
Joan Vannorsdall
Shannon Cox
VIA: EMAIL

Honorable Members of the Board of Supervisors,

I have been encouraged to run for the Board of Supervisors to represent the Clifton Forge West District. To aid my candidacy, I want to demonstrate to my constituents I am going to work towards ending all acts of prejudice and retaliation towards individuals who strive to be part of the self-governance process in our great republic. Members of the Board of Supervisors (you) have taken a keen interest in my personal and public performance, as well as my ability to properly represent the Clifton Forge West District as a member of the Alleghany County School Board.

Due to the opinions of the members of the Board of Supervisors, regarding my performance, the members have consequently and callously petitioned for me to be removed. Since the members of the Board of Supervisors have positioned itself to monitor the private and public lives of public officials, I only find it prudent that I share the following information with you as it should aid you in making your upcoming School Board appointment decision. May 29 2021 via the Virginian Review it was published you would be making the school board appointment on June 1 2021. One appointment will be to re-appoint Jacob Wright to represent the Boiling Springs district as a member of the Alleghany County School Board.

Jacob Wright confided in me in July of 2018 in a conversation indicating that he created a hostile work environment that was so extreme and "wild" as he described it ultimately leading to Keven Rice resigning. Jacob Wright states:

**"We have to keep Keven on his toes. You know I got him to resign once, right? Hahaha I used to drive him wild. We have to be adamant about budget and finance". Jacob Wright**

Jacob Wright (Grey Text):

Yes! We need to take the lead. I need to go over quite a few things with you to kind of get you up to speed. I appreciate all of your questions tonight. I had a lot of the same ones. We have to keep Keven on his toes. You know I got him to resign once, right? Hahaha I used to drive him wild. He have to be adamant about budget and finance.

## FOR COMMUNITY ● FOR FAMILY ● FOR YOU

In addition, Jacob Wright boasted with pride when he shared his triumphant feat in causing Keven Rice to resign with other members of the School Board in February of 2021. This occurred when Gerald Franson, Danielle Morgan, Richard Shull, John Littleton, and I were all awaiting to interview a Superintendent candidate for appointment.

I remind you that Jacob Wright on October 6 2020 during your regular meeting stated that Keven Rice filed a complaint accusing me of creating a hostile work environment. I would like to point out that Keven Rice has never resigned (for a second time) while I have been on the School Board.

Jacob Wright, confessed to me that the School Board was going to chastise Eugene Kotulka, the former Superintendent for his treatment of me during the October 2019 school board meeting. Jacob Wright states:

### "And I think someone is going to chastise Gene for how your situation was handled"

I (Donnie Kern) responded:

### "An apology and a seat at the SEAC will

### suffice, no chastising necessary [sic]".

> Jacob Wright
> And I think someone is going to chastise
> Gene for how your situation was handled
> 9:34 AM
>
> Me
> An apology and a seat at the SEAC will
> suffice, no chastising nesseccary
> 9:39 AM

The School Board was going to retaliate against the school superintendent Eugene Kotulka. I didn't want that. No one should be retaliated against.

Jacob Wright has contributed to the systemic violation of School Board policies. I will share three examples.

First-The Budget Committee appointment snafu that we discussed on October 27 2021 during my six-hour interrogation. School Board policy requires that the budget committee be appointed in July at the re-organization meeting. During the July 2020 meeting this appointment was not made. Jacob Wright attempted to appoint the committee in December 2020, on the exact day that I would be removed from office due to the petition members of the Board of Supervisors filed, however I sought to have a trial by jury foiling this plot. Why didn't Jacob Wright make any effort or attempt to appoint the Budget Committee on August, September, October or November? I sent an email advising my peers on the School Board that by making the appointment in December the School Board would be violating the policy a second time, because the policy requires us to make the appointment in July during the reorganization meeting. We had to revise a policy that has been in good standing for many years to correct Jacob Wright's snafu.

**FOR COMMUNITY**  **FOR FAMILY**  **FOR YOU**

Kern, Donnie

To:

Saturday, December 12, 2020 8:03 P

Peers,

I was surprised to see that we will finally be appointing the Administrative Budget Committee during the meeting on Monday.

I would like to emphasis that the policy states:

"The only standing committees of the Alleghany County School Board shall be the Special Committee on Board Governance and the Administrative Budget Committee.
The Special Committee on Board Governance and the Administrative Budget Committee shall be appointed by Board action annually at its re-organizational meeting" Policy BCF.

I bring this to your attention that it doesn't not provide a minimum or maximum number of members to be appointed to the committee. I feel that if anyone who has time to devote and would like to participate in this committee should avail themselves to seek appointment during the meeting this Monday. If we restrict participation to this committee when not indicated in the policy it could be seen as exceeding the authority vested in the policy.

I also want to point out that the School Board violated this policy due to not making the reappointment during the re-organization meeting in July. I do not think it prudent to violate it once more on Monday.

I also find it systemically troubling that the appointment of this committee is on a date in which I would be potentially removed from office by the Board of Supervisors.

I would like to express my interest in serving on this committee. I hope I will have your support. I will work cohesively with the rest of it's members and I feel there are improvements that need to be made so that I can participate fully in our school board meetings. These improvements will also help increase public transparency and trust in what we are doing in our annual operations.

I believe that this committee is subject to FOIA. The meeting should be open to the public and publicly posted as this committee's appointment is approved by the School Board, and this committee provides a benefit to the School Board i.e. a draft of the budget.

Thanks for your consideration.

*Donnie T.A.M. Kern*
School Board Member AHS Class of 2001

**Second**– Jacob Wright exceeded his authority in enacting provisions contained in **Policy KD** by refusing to allow members of the public (students and parents) a chance to voice their concerns during the January 2021 called meeting to discuss the "Let Them Play" movement which focused on having our students return to sports safely during the pandemic. I have unequivocally supported our student's ability to return to sports. I believe my support for sports while a member of the School Board helped clear a path forward enabling our students to compete and to have the opportunity to earn a state title victory for the first time in the history of Alleghany County Public Schools. Over fifty (50) students and parents sent emails to members of the School Board seeking an audience to be listened to. They wanted to speak during this meeting. Jacob Wright's excessive authority silenced their voices.

The message sent by Sherman Callaghan on behalf of Jacob Wright stating:

"We are looking at an hour and a half at least to read all the comments. **Policy KD** permits the chairman to set a "reasonable time limit" for comments. I have spoken with Jacob and he is going to make a statement that X emails have been received in support of athletics but will not be

> Superintendent
> As you have seen in your emails, we have received MANY emails Re: Athletics. I'm sure more will come in throughout the day today.  We are looking at an hour and a half, at least, to read all the comments. Policy KD permits the chairman to set a "reasonable time limit" for comments. I have spoken with Jacob and he is going to make a statement that X emails have been received in support of athletics but will not be read aloud.  All the comments will be included in the official minutes. Thank you.
> 9:38 AM

# FOR COMMUNITY  FOR FAMILY  FOR YOU

### PUBLIC PARTICIPATION AT SCHOOL BOARD MEETINGS

Members of the community are invited and encouraged to attend meetings of the Allegheny County School board to observe its deliberations. Any member of the community may address the Board on matters related to the Allegheny County Public Schools at any regular meeting as provided in the accompanying regulation. Persons wishing to address the School board are requested to contact the superintendent, the School board chairman, or their designee for placement on the agenda.

The chairman is responsible for the orderly conduct of the meeting and shall rule on such matters as the appropriateness of the subject being presented and length of time for each presentation. No one will be allowed to make additional presentations until everyone who wishes to speak has an opportunity to make an initial presentation.

A reasonable period of time, as determined by the School board, will be allocated at each regular meeting for community members to present matters of concern.

Adopted:     November 17, 1997
Amended:     October 20, 2008
Amended:     October 21, 2013
Amended:     November 16, 2015

File: KD
(Also BCCH)

Policy KD states that the School Board will set a "reasonable period of time", not the Chairman. I sent an email in response to my peers after our meeting encouraging them to resume in-person meetings and to end the denial of public comments. I stated:

**"I feel that there are a lot of disgruntled individuals because we failed to allow them to share how they are feeling. Putting the emails into the minutes is not what these individuals wanted. They wanted to be heard. We failed them as a board. I feel strongly that we need to go back to in-person meetings...We should not view people's point-of-view as an attack but an opportunity to improve how we do things...We should not put a time restriction on our families. We signed up for this." Donnie T.A.M. Kern**

RE: To be shared with board members.

Kern, Donnie

To:      Wm. Lisa's, ACPS School Board
Cc:      Callahan, Harvey
Attachments:   [Attachments]

Peers,

Thank you for sharing. I would also like to share my own feelings on how we handled this meeting. I feel that there are a lot of disgruntled individuals because we failed to allow them to share how they are feeling. Putting the emails into the minutes is not what these individuals wanted. They wanted to be heard. We failed them as a board. I feel strongly that we need to go back to in-person meetings, then this decision is made it needs to be done publicly. We should not view people's point-of-you as an attack but an opportunity to improve how we do things. If someone cannot make the meeting then they should be able to dial in. We should not put time restrictions on our families. We signed up for this. I am reviewing the sport mitigation plan.

I do want to say I think we did have a good open discussion. I think Mr. Callahan did an impressive job by creating this opportunity to have it. I believe this is what this school board has been missing for a very long time. We need to throw all the options on the table instead of being hand feed recommendations.

Lastly, please send me the budget that will be discussed at the next meeting. I would like to have it before the meeting so that I will be equipped to engage in active discussion. In past practice it has been handed to me at the meeting.

Thanks

Donnie T.A.M. Kern
School Board Member, AHS Class of 2001

## FOR COMMUNITY ● FOR FAMILY ● FOR YOU

Third-The return of $500,000 of approximately $1.4 million dollars to the Alleghany County Board of Supervisors. As I recall, August 2020 the School Board was presented with an information item (pictured) to consider a request by the Board of Supervisors to return $500,000 of $1.4 million (approximate) of unspent funds by the school division. According to Eugene Kotulka during a private conversation this amount could be up to $1,000,000 that would be returned to the Board of Supervisors.

The information item notifying the School Board of your request to have the funds returned stated the following: **"Leadership Committee...met during the FY2021 budget process".** The School Board does not have a leadership committee and the School Board has never appointed a leadership committee. The only policy mandated committee is the Budget Committee and Governance Committee. Governance deals with policies of the School Division, not Leadership.

Who is on the Leadership Committee? When did this appointment take place? When did this Leadership Committee meeting take place? Did you invite the public to attend this meeting? The Freedom of Information Act requires meetings of this nature to be open to the public and for the public to be informed of the meeting. As a member of the school board, I do not recall ever in the past three years having heard of the Leadership Committee.

**How can our community partake in self -governance if the public is denied access to these meetings and discussions?**

| SUBJECT | Return of Funds to Alleghany County |
|---|---|
| RATIONALE | The leadership committees of the County of Alleghany and the Alleghany County School Board met during the FY2021 budget process to discuss the local funding effort for FY2021. It was decided by the committees that the school board would return to the county $500,000.00 in fund balance (FY2020 year-end operating balance or, if that was insufficient, from cumulative fund balance) in lieu of the county reducing its local FY2021 appropriation to the school board by an equivalent amount. The July 1, 2020 memorandum on Year-End Operating Balance Summary reflects this $500,000.00 obligation to be paid from the FY2020 operating balance. This will be an action item for the September 21, 2020 school board meeting. |
| ESTIMATED COSTS | $500,000.00 |
| BUDGET CATEGORY | Fund Balance |
| LEGAL REFERENCE | N/A |
| STAFF CONTACTS | Keven Rice |
| ADMINISTRATOR'S RECOMMENDATION | |

In conclusion, I also know you are keen on expenses that are caused by School Board members. Jacob Wright initiated and negotiated a settlement by and between an employee of our school division. I brought this to your attention October 6 2020. I will remind you once more. The approximate cost of this settlement is around $50,000 to taxpayers which does not include the legal fees associated with drafting and commencing it. Please review the three pertinent clauses from this settlement (below)/(next page).

**FOR COMMUNITY ● FOR FAMILY ● FOR YOU**

3. Non-Disparagement. The parties agree not to disparage, criticize, or speak negatively of the other. This Agreement is entered into in good will for the mutual benefit of the parties, and the ▮▮▮ and the Board agree to treat all communications with each other and with the public in that positive light. Other than official action required by state law, the parties agree that the only public statement to be issued by either party will conform to the statement attached hereto as Exhibit B.

4. Confidentiality. ▮▮▮ represents and agrees that ▮ will keep the terms, conditions, covenants, and existence of this Agreement strictly confidential, and will not disclose, or cause to be disclosed, any information concerning this Agreement that is not made generally available to the public as required by law to any person except ▮ immediate family members, legal counsel, and accountant, and then only after such persons have agreed not to disclose any facts concerning the settlement. ▮▮▮ further agrees not to disclose, or cause to be disclosed, any information concerning this Agreement to any media or publishing entity. Notwithstanding the foregoing, ▮▮▮ obligation of confidentiality shall not extend to any disclosure mandated by law, order by a court of competent jurisdiction.

5. ▮▮▮ Cooperation. ▮▮▮ recognizes that, because of ▮ position with the Board, it is important that the Board's employees and the public perceive that ▮▮▮ is a mutually desirable and positive event. This Agreement is entered into in good will for the mutual benefit of the parties, and the ▮▮▮ agrees to treat all communications with the Board and with the public in that positive light. From the effective date of the Agreement until 5:00 p.m. ▮▮▮ agrees to cooperate with the Board to resolve pending litigation or state and federal complaints arising during the ▮▮▮ employment about which the ▮▮▮ knowledge. The Board agrees to announce publicly only that the ▮▮▮ set forth in Exhibit B. The Board will make no other statements regarding the end of ▮▮▮ employment except as set forth herein.

I refused to sign this agreement while all other members on the School Board approved. Please explain why the employees of the school division and public should perceive that this employee's retirement is mutually desirable and a positive event? Why not just hold the individual accountable, terminate employment and save $50,000?

Please explain why the agreement requires that each party will not disparage, criticize, or speak negatively of the other? If our School Board did so many positive things why should the School Board be afraid of what this employee would have to say about members of the School Board?

Make no mistake, I offer this information as it pertains to the governmental affairs of our school division and that of the Board of Supervisors as a political candidate. As a fulfillment of my campaign promise, I share this information to prevent any future retaliation or prejudice against those who contribute to our great republic of self-governance. My constituents of the Clifton Forge West District want to know; will you re-appoint Jacob Wright? Will you petition him to have him removed from office?

Public Service Announcement: ***It is a federal crime under §241 Title 18, and §242 Title 18 to conspire and deprive an individual of their civil rights (Free Speech, Due Process, etc.). Sovereign immunity is no defense***

Greg Dodd my Clifton Forge West District representative, your words can inspire, and your actions speak for themselves. You make the choice to speak or remain silent. Let me catch you up to speed. In 2018, an employee came to me with a student complaint seeking an advocate. I chose to advocate for the child's civil rights (below left). I sent this complaint to the School Division. They choose not to investigate until they had more information (below right).



I sent the complaint to Child Protective Services (CPS) they investigated (left). In fact, the issue was so bad, that a very famous outside advocate got involved: **Amy Trail.** This is what she said:

**"I know Dr. Heath herself had a meeting with the Superintendent on Tuesday morning and another one this morning before she talked to me. So, I am sure. You know here is an idea, don't do it. I mean that sincerely. <u>I told her. I am not asking what is going on. I am just telling you whatever it is it can't be right. So you might want to fix that. I do not want to come down to that school and find out that he is still in a closet somewhere.</u> And I said it just like that. Because there is way more going on..." -Amy Trail**

July of 2020 this situation was discussed by the School Board for the first time. Jacob Wright heard the audio. Members of the Board of Supervisors in their petition under the penalty of perjury said I admitted that I failed to determine the validity of the situation. Obviously based on what I just presented this is false. Read the transcript from October 27th. I never made this admission . <u>In a recent court hearing it was stated that the members of the Board of Supervisors will not testify.</u> I remind you, you represent me too.

Donnie T.A.M. Kern
Political Candidate for the Clifton Forge West District Board of Supervisors: For Community, For Family, For You
115 Church Street
Clifton Forge, VA 24422
www.donnietamkern.com
votedtamk@yahoo.com

On August 10 2021 the Respondent filed a motion for continuance which was granted on August 12 2021 by the Honorable Judge Ed Stein.

Motion for continuance is a fifty-two-page motion submitted by the Respondent Pro Se with numerous details on why continuance was required by the Respondent. The Respondent was told the recorded audio of Amy Trail statements would not be admitted into evidence, then subsequently on August 5 2021 Amy Trail was not deposed. Amy Trail was the Respondent's star witness.

On August 12 2021 a hearing was set at 2:00PM. The following participants were John Fishwick, Daniel Martin, Patrick Jensen, Jim Guynn, the Respondent, and the Honorable Judge Ed Stein.

Honorable Judge Ed Stein asked what the Commonwealth's position was on the motion for continuance

**Patrick Jensen:**

"…There has been a lot of issues of in-discovery, and that has been receiving discovery from Mr. Kern we have been working, I think extremely well with Mr. Fishwick and his firm. In reading that 52-page motion to continue uh, in there, Mr. Kern concedes that he has never provided any documents to his attorney Mr. Fishwick. Thus, they have never been turned over to us."

"...So, I guess the position of the Commonwealth is, when we file that motion we probably won't object to a continuance if the court hears that motion to suspend Mr. Kern and he is in fact suspended from office"

"...Honestly Judge our ability to properly prepare for this trial has been hampered by Mr. Kern's actions"

**Jim Guynn:**

"I would only add that I think it's awfully late in the game. and I am very concerned about gamesmanship in this situation. This is a very serious matter. If it turns out that we are correct. Then it is delaying what needs to be done. You do not get to seek a continuance two weeks before trial and keep your position until a jury tells you to go back or not."

**Donnie T.A.M. Kern:**

"When we went through the initial discovery process, I wasn't 100% sure what the deadline was so from my understanding we had finished the request for admissions, and the interrogatories that were requested and from my understanding those were turned over already. I do not know if Mr. Fishwisk has done that. I did find Mr. Fishwick also some of the items including complaints that were supposed to have been furnished. I don't know if those have been furnished...again it's very convoluted if you look at my schedule for me to go through three different email accounts maybe four and three

years of information. I am trying to abide by what they are wanting to have

so I don't think there is any part on mine to purposely and in any way

intentionally deny them what they are wanting. Do I disagree whether or not

they should get it I was hoping to have a really phenomenal attorney to help

make those objections but"

**Honorable Judge Ed Stein:**

"Here is what I am going to do gentleman. Cause I do not want Mr. Kern, I

don't think it is reasonable to suggest he is going to get a new lawyer and be

ready for trial in two weeks. I understand the Commonwealth's position but

I really don't want to put off a motion to continue because we need to start

summoning the jury. So, I am going to go ahead and let Mr. Fishwick out. I

am going to grant the motion to continue. Everyone should be available the

twenty fifth of August right?...That's what we are going to do Mr. Kern that

was the day your trial is going to start, I am going to continue your trial and

I will hear the Commonwealths motion that they say they are going to file

with regard to suspension or any other issues on the twenty-fifth of August

9:00AM the first day that would have been your trial, **you going to have**

**counsel by then that is fine, if you don't have counsel we probably do it**

**anyway"**

In retaliation the Commonwealth stated it would file a motion to suspend the Respondent which the Commonwealth did on August 13 2021. As opined by Jim Guynn on August 12 2021:

**Jim Guynn**

> **"You do not get to seek a continuance two weeks before trial and keep your position** until a jury tells you to go back or not."

**Patrick Jensen:**

> "I guess the position of the Commonwealth is, when we file that motion, we probably won't object to a continuance **if the court hears that motion to suspend Mr. Kern and he is in fact suspended from office"**

On August 13 2021 a motion to suspend the Respondent was filed by the Commonwealth of Virginia.

## VII. CLAIM(S)-FEDERAL SUBJECT MATTER 28 U.S.C. under §1331 §1441, and §1443

The Alleghany County Board of Supervisors (herein after The Board) under the "color of law" in filing a petition under §24.2-234 alleged allegations against the Respondent because the Respondent took action that constituted

> For neglect of duty, misuse of office, or incompetence in the performance of duties when that neglect of duty, misuse of office, or incompetence in the performance of duties has a material adverse effect upon the conduct of the office;

Under Virginia Code §24.2-233. The actions of the Respondent were actions afforded under the Constitution, laws, and treaties of the United States including Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment I, U.S. Constitution Amendment VIII, U.S. Constitution Amendment XIV, 42 U.S.C. §1983 & §1985 which are all considered federal subject matter jurisdiction that raise federal questions under 28 U.S.C §1331, §1441, and §1443

Respondent reminds the court:

> "Plaintiffs properly pleaded complaint governs the jurisdiction inquiry. If, on
>
> its face, the plaintiff's complaint raises no issue of federal law, federal
>
> question jurisdiction is lacking" (Hart v. Bayer Corp., 199 F.3d 239, 243)
>
> (5th Cir. 2000)

Furthermore, in Louisville & Nashville v. Mottley, 211 U.S. 149 (1908) the U.S.
Supreme court opined:

> "a suit arises under the Constitution and laws of the United States only when
>
> the plaintiff's statement of his own cause of action shows that it is based
>
> upon those laws"

**Allegation #2 of the petition.**

2.      On several occasions after he assumed office as a school board member, Kern has
referred to special needs students as "retards."

The face of the petition under allegation #2 clearly in its description: "Kern has
referred to special needs students as 'retards'" using quotes in relation to spoken
word. The Board under "color of law" is retaliating against the Respondent and the
cause of action based on the Respondent having exercised U.S. Constitution.
Amendment. I specific to speech, redress, and assembly. The respondent under
oath testified on October 27 2020 that the respondent did not recall saying this
word in discussion with a child advocate in seeking help for the respondent's child

specific to special education. The Board still sought removal via the petition which violated the respondent's equal protection rights under U.S. Constitution. Amendment. XIV, and 42 U.S.C. §1983 and §1985 as The Board did not seek removal of Jacob L Wright, member of the School Board for public swearing and intoxication in 2018 which could also be considered neglect of duty, misuse of office, or incompetence in the performance of duties.

**Alleghany General District Court**
Case #: GC17007641-00                                                      Defendant: WRIGHT, JACOB LACY

| Defendant Information | | | |
|---|---|---|---|
| Address: COVINGTON, VA 24426 | | | |
| Gender: MALE | | Race: WHITE | DOB: ▓▓▓▓ |
| Attorney: | | | |

| Case/Charge Information | | | |
|---|---|---|---|
| Defendant Status: RELEASED ON RECOGNIZANCE | | | Locality: COMMONWEALTH OF VA |
| Code Section: 18.2-388 | Filed Date: 12/29/2017 | Charge: PUBLIC SWEARING/INTOXICATION | |
| Case Type: MISDEMEANOR | Class: CLASS 4 | | |
| Offense Date: 12/23/2014 | Arrest Date: | | Complainant: PIERCE, JOHN |
| Amended Code Section: | Amended Charge: | | |
| Amended Case Type: | Amended Class: | | |

| Appeal Information | |
|---|---|
| Appeal Date: | |

| Hearing Information | | | |
|---|---|---|---|
| Date | Time | Result | Type |
| 01/18/2018 | 09:00 AM | WAIVED | ADJUDICATORY |

| Disposition Information | | | |
|---|---|---|---|
| Disposition: PREPAID | | | |
| Sentence Time: | | Sentence Suspended: | |
| Probation Type: | | Probation Time: | |
| Operator License Suspension Time: | | Restriction Effective Date: | |
| Operator License Restrictions: | | | |
| VASAP: | | | |
| Fine: $25.00 * | | Costs: $86.00 * | |
| Fine/Costs Paid: YES | | Fine/Costs Paid Date: 01/17/2018 | |
| * This system cannot process online payments at this time. Please refer to ' How to Pay Traffic Tickets and Other Offenses ' for more information. | | | |

**Petition Allegation #3**

3.      On several occasions Kern has falsely stated that school officials locked a special needs student in a closet and that the student later brought presents to win favor with special education personnel at his school.

The face of the petition under allegation #3 states: "…..Kern has falsely **stated** that school officials **locked** a special needs student in a closet…."". The Board's allegation uses the word "stated" which is indicative of speech. The Board under "color of law" is retaliating against the Respondent and the cause of action was the Respondent having exercised U.S. Constitution. Amendment. I specific to speech, redress, and assembly in which the respondent published an editorial describing his experience in an effort to redress and assemble using a statement that was made by Amy Trail. The respondent didn't make the statement, Amy Trail made the statement, the statement was used to describe the respondent's experience. The respondent is not aware of the use of the word **"locked"**.  In addition, this is violation of U.S. Constitution. Amendment. I. specific to censorship. The Board still sought removal via the petition which also violated the respondent's equal protection rights under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985 as The Board did not seek removal of Randy Tucker for School Board Chairman or any other school board member whereas on February 25 2019 Randy Tucker during a public-school board meeting with support by members of the

school board shared a statement that was made by Amy Trail which was false. This statement is located in section VI. Background.

**Petition Allegation #4**

> 4.    Most recently, Kern made the false statement about locking a special needs student in a closet in an advertisement he placed in *The Virginian Review*. Kern has admitted that he made no effort to determine the truth or falsity of the statement prior to publishing it.

The face of the petition under allegation #4 states: ".....Kern made the false statement about locking a special needs student in a closet in an advertisement he placed in the Virginian Review. Kern has admitted that he made no effort to determine the truth or falsity of the statement prior to publishing it". The Board's allegation uses the phrase "made the false statement...in an advertisement he placed in the Virginian Review" which is indicative of speech and a written form of expression. The Board under "color of law" is retaliating against the Respondent and the cause of action due to the Respondent having exercised U.S. Constitution. Amendment. I. specific to speech, redress, and assembly in which the Respondent published an editorial describing his experience in an effort to redress and assemble using a statement that was made by Amy Trail. The respondent didn't make the statement, Amy Trail made the statement, the statement was used by the Respondent to describe the Respondent's experience. The Respondent is not aware

of the use of the word **"locking"** having been used.  In addition, this is violation of

U.S. Constitution. Amendment. I. specific to censorship. The Board still sought

removal via the petition which also violated the Respondent's equal protection

rights under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985 as

The Board did not seek removal of Randy Tucker or any other school board

member whereas on February 25 2019 Randy Tucker during a public-school board

meeting with support by members of the school board shared a statement that made

by Amy Trail which was false. This statement is located in section VI Background.

In addition, the allegation in the petition specific to "Kern has admitted that he

made no effort to determine the truth or falsity of the statement prior to publishing

it" is false and The Board knew that it was false which gives rise to the

commission of perjury as it was explicitly explained on October 27 2020 what the

Respondent did to seek the truth giving rise to The Board's action under "color of

law".  In addition, further causes of action are associated with the Respondent

attempting to seek redress and stifle discriminatory practices under Section 504 of

the Rehabilitation Act, Title VI of the Civil Rights Act of 1964.

**Petition Allegation #5**

> 5.    In publishing the story about the special education student who was allegedly locked in a closet, Kern exhibited a reckless disregard for the falsity of the statement and defamed the director of special education for Alleghany County Public Schools and other school employees.

The face of the petition under allegation #5 states: "In publishing the story about the special education student who was allegedly lock in a closet...defamed the director of special education for Alleghany County Public Schools...". The Board's allegation uses the phrases "published", "story", "special education student", "defamation", director of special education", "Alleghany County Public Schools which is indicative of speech and written form of expression. The Board under "color of law" is retaliating against the Respondent and the cause of action due to the Respondent having exercised U.S. Constitution. Amendment. I. specific to speech, redress, and assembly in which the respondent published an editorial describing his experience in an effort to redress issues related to the scholastic conditions within the school division as it pertains to individuals with disabilities. Amy Trail made the statement regarding the condition of the student, the statement was used to describe the respondent's experience as well as anonymity and protection of the student which counsel for The Board agreed with its use. The respondent is not aware of the use of the word **"locked"**.  In addition, this is

violation of U.S. Constitution. Amendment. I. specific to censorship. The Board still sought removal via the petition which also violated the respondent's equal protection rights under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985 as The Board did not seek removal of Randy Tucker or any other school board member whereas on February 25 2019 Randy Tucker during a public-school board meeting with support by members of the school board shared a statement that was made by Amy Trail which was false defaming the Respondent. This statement is located in section VI Background. In addition, the allegation in the petition specific to "Kern reckless disregard for the falsity of the statement" is false and The Board knew that it was false giving rise to the commission of perjury as it was explicitly explained by the Respondent on October 27 2020 what the Respondent did to seek the truth in the situation giving rise to The Board's action was under the "color of law". In addition, further causes of action are associated with the Respondent attempting to seek redress and stifle discriminatory practices under Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964.

In addition:

New York Times Co. v. Sullivan, 376 U.S. 254 (1964) as opined by the United States Supreme Court denying damages to a public official for defamation:

Those who won our independence believed that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law— the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech and assembly should be guaranteed

Thus we consider this case against the background of a profound national commitment to the **principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials**

In the realm of religious faith, and in that of political belief, sharp differences arise. In both fields the tenets of one man may seem the rankest error to his

neighbor. To persuade others to his own point of view, the pleader, as we know,

at times, resorts to exaggeration, to vilification of men who have been, or are,

prominent in church or state, and even to false statement. But the people of this

nation have ordained in the light of history, that, in spite of the probability of

excesses and abuses, these liberties are, in the long view, essential to

enlightened opinion and right conduct on the part of the citizens of a democracy

That erroneous statement is inevitable in free debate, and that it must be

protected if the freedoms of expression are to have the 'breathing space' that

they 'need to survive

**Petition Allegation #6**

> 6.      Since his appointment to the school board, Kern has engaged in behavior toward
> school division staff and administration that prompted a member of the school administration to
> file a complaint of a hostile work environment as a result of Kern's actions.

The face of the petition under allegation #6 states: "Kern has engaged in behavior

toward school division staff…school administration to file a complaint of hostile

work environment as a result of Kern's actions". The Board's allegation uses the

phrase "Kern's actions". The Respondent's actions The Board petitions for

removal is specific to filing a report with state officials as indicated in a letter that

was drafted by Eugene Kotulka, Superintendent of Alleghany County Public

Schools. The report the Respondent sent to state officials highlighted deficiencies

within the school division specific to discrimination against individuals with disabilities. The Board under "color of law" is retaliating against the Respondent and the cause of actions due to the Respondent and the cause of action due to the Respondent having exercised U.S. Constitution. Amendment. I. specific to speech, redress, and assembly and the application of protections under Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964 in which the respondent filed a report with state officials in an effort to stifle discriminatory practices. The Board still sought removal via the petition which also violated the respondent's equal protection rights under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985 as The Board did not seek removal of Jacob Wright who on October 6 2020 alleged complaints against the Respondent during a public meeting with the Board of Supervisors. The Board was made aware that Jacob Wright admitted to "driving" a staff member wild causing the staff member to resign which is indicative of creating a hostile work environment. Jacob Wright was not asked to resign or petitioned to be removed.

**Petition Allegation #7**

.7.     Pursuant to policy, the school board retained a third party to investigate the hostile work environment allegation.

Respondent filed a complaint against Eugene Kotulka, Superintendent in November of 2018. Eugene Kotulka was the Superintendent of Alleghany County Public Schools at the time. The same and equal complaint process was not afforded to the Respondent in November 2018 that was used against the Respondent in this allegation. The Board still sought removal via the petition which violated the Respondent's equal protection rights under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985. This allegation is connected to Allegation #6 and The Board in its cause of action in filing a petition was based on the Respondent having exercises protections and rights under Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment 1, U.S. Constitution Amendment XIV, 42 U.S.C. §1983 & §1985. In addition, this allegation is demurrer.

**Petition Allegation #8**

8.    Kern refused to participate in the investigation even though it was mandated by school board policy.

The respondent was given a choice to participate, participation was not required. The respondent requested copies of the complaints and all accompanying documents related to the complaints prior to meeting with the investigator. The respondent wanted to cooperate with the investigation but was denied full access to cooperating. Respondent was told the complaints and accompanying documents

would be furnished at the conclusion of the investigation. These complaints and

accompanying documents have yet to be furnished. This allegation is in response to

Allegation #6 therefore the cause of action in which The Board seeking to remove

the Respondent for exercising protections under Section 504 of the Rehabilitation

Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment 1.

In addition, it was made known to The Board on October 6 2020 and on June 1

2021 that other school board members have not followed policies, yet The Board

has not asked these school board members to resign or nor did The Board petition

them for removal. This is a violation of the Respondent's equal protection under

the law U.S. Constitution. Amendment. XIV, 42 U.S.C. §1983 and §1985.

**Petition Allegation #9**

> 9.      The third party neutral found that Kem indeed created a hostile work environment for the administrator.

This allegation is in reference to Allegation #6.  The respondent was never

provided the complaints alleging a hostile work environment.  Respondent's full

participation in the investigation could not occur. Respondent contests that the

third-party neutral was not third-party neutral. Respondent filed a complaint

against Eugene Kotulka, Superintendent for Alleghany County Public Schools in

November of 2018. Eugene Kotulka's involvement with the complaint against the

respondent was a conflict of interest. The third-party investigator had ties to the

Virginia Department of Education and public education system. The same and equal complaint process was not afforded to the respondent in November 2018 therefore the cause of action for The Board to seek removal of the Respondent is from the Respondent exercising protections under Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment 1.

In addition, it was made known to The Board on June 1 2021 that Jacob Wright admitted to "driving" a staff member wild causing them to resign which is indicative of creating a hostile work environment. Jacob Wright was not asked to resign or petitioned to be removed. This is a violation of the Respondent's equal protection under the law U.S. Constitution. Amendment. XIV, 42 U.S.C. §1983 & §1985.

### Petition Allegation #10

10.     Kern's actions since the Board of Supervisors appointed him to the school board constitute a vendetta fueled by Kern's belief that the school system has somehow mistreated his child or children.

The face of the petition under allegation #10 which references also Allegation #6 states: "Kern's actions...constitute a vendetta fueled by Kern's belief that the school system has somehow mistreated his child, or children". The Board's allegation uses the phrase "Kern's actions", "Kern's belief". The Respondent's

"actions", and "belief" were the cause of action for The Board to petition the Respondent for removal consist of the Respondent filing a report with state officials and the United Stated Department of Education Office of Civil Rights ti stifle discriminatory practices which are protected under Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964. The Respondent's "belief" is a protected right under the constitution. The Board under "color of law" is retaliating against the Respondent and the cause of action due to the Respondent having exercised U.S. Constitution. Amendment. I. specific to speech, redress, and assembly in which the respondent filed a report with state officials and the United States Department of Education. The Board still sought removal via the petition which also violated the respondent's equal protection rights under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 and §1985 as The Board did not seek removal of Jacob Wright, who on October 6 2020 alleged complaints against the Respondent during a public meeting with the Board of Supervisors **or other members of the School Board that have alleged public complaints against the Respondent.**

## Petition Allegation #11

11. Kern has made false and baseless complaints of illegalities and corruption at Alleghany County Public Schools that have disrupted the work of the school administration and cost the school division thousands of dollars in legal fees that were otherwise unnecessary.

The face of the petition under allegation #11 which references also Allegation #6 states: "Kern has made false and baseless complaints…at Alleghany County Public Schools…and cost the school division thousands of dollars in legal fees that were otherwise unnecessary". The Board's allegation uses the phrase "Kern has made false and baseless complaints…at Alleghany County Public Schools" and "Costs the school division thousands of dollars in legal fees". The Board petition for removal of the Respondent is associated with the cause of action in which the Respondent filed a report with state officials and the United Stated Department of Education Office of Civil Rights. The Board under "color of law" is retaliating against the Respondent having exercised U.S. Constitution. Amendment. I, specific to speech, redress, and assembly and the application of protections of Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, 42 U.S.C. §1983 & §1985.

The Board still sought removal via the petition which also violated the respondent's equal protection rights under U.S. Constitution Amendment XIV, 42 U.S.C. §1983 & §1985 as The Board did not seek removal of Jacob Wright, who on October 6 2020 alleged complaints against the Respondent during a public

meeting with the Board of Supervisors **or other members of the School Board that have alleged public complaints against the Respondent.** Jacob Wright and other members of the school board have created thousands in legal fees due to neglect of duty, misuse of office, or incompetence which The Board was made aware of but these individuals have not been asked to resign or petitioned to be removed.

**Petition Allegation #12**

12.   Kern's actions constitute neglect of duty, misuse of office, and incompetence in the performance of his duties.

The face of the petition under allegation #12 states: "Kern's actions constitute neglect of duty, misuse of office, and incompetence…". The Respondent has provided The Board significant accounts of other school board members being neglectful, misusing of the office, and incompetence on October 6 2020, October 27 2021, and June 1 2021 and these members have yet to be petitioned or asked for their resignations which constitutes a violation under equal protection of the law U.S. Constitution. Amendment XIV, 42 U.S.C. §1983 & §1985. The cause of action for The Board to petition the Respondent's removal is related to petition allegations 2-11.

**Petition Allegation #13 of the petition is demurrer/false.**

13.    Kern's neglect of duty, misuse of office, and incompetence in the performance of his duties have had a material adverse effect upon the conduct of the school board.

The face of the petition under allegation #13 states: "Kern's actions constitute neglect of duty, misuse of office, and incompetence...have had a material adverse effect upon the conduct of the school board". The respondent has provided The Board significant accounts of other school board members being neglectful, misusing of the office, and incompetence which have created a material adverse effect upon the conduct of the school board on October 6 2020, October 27 2021, and June 1 2021 and these members have yet to be petitioned to be removed or asked for their resignations which constitutes a violation under equal protection of the law U.S. Constitution. Amendment XIV, 42 U.S.C. §1983 & §1985. The cause of action for The Board to petition the Respondent's removal is related to petition allegations 2-11.

**Motion to Suspend-Retaliation**

Commonwealth of Virginia as Petitioner for the Alleghany County Board of Supervisors in filing a motion on August 13 2021 under Virginia Code §24.2-236 which was filed in villainous retaliation violated Section 504 of the Rehabilitation Act, Title VI of the Civil Rights Act of 1964, U.S. Constitution Amendment 1,

U.S. Constitution V, U.S. Constitution Amendment VIII, U.S. Constitution Amendment XIV, 42, U.S.C. §1983 & §1985:

On August 12 2021 approximately around 2:00PM. As opined during a hearing called by the Alleghany County Circuit Court by

**Jim Guynn**

> **"You do not get to seek a continuance two weeks before trial and keep your position** until a jury tells you to go back or not."

and

**Patrick Jensen:**

> "I guess the position of the Commonwealth is, when we file that motion, we probably won't object to a continuance **if the court hears that motion to suspend Mr. Kern and he is in fact suspended from office"**

and **Judge Ed Stein** concluding:

> "I am going to continue your trial and I will hear the Commonwealth's motion they say they are going to file...on the 25th of August 9:00AM...**if you're going to have counsel by then that is fine, if you don't have counsel, we will probably do it anyway"**

The Commonwealth of Virginia in a retaliatory response to the respondents constitutionally protected right of speech, redress, and due process in filing a

motion for continuance on August 10 2021 filed a motion to suspend the respondent from the Alleghany County School Board on August 13 2021. Which was a successor of the petition filed on December 2 2020 by the Board which was also filed in retaliation. The petition filed on December 2 2020 if it had not been filed, the August 13 2021 motion would also not be filed.

## VIII. FEDERAL JURISDICTION FAVORED

The respondent would like to make the court aware that the following are additional reasons the respondent has a preference of the United States District Court over the Alleghany County Circuit Court including but not limited to:

Due process with an impartial Judge and Commonwealth Attorney

> The Commonwealth Attorney is charged with

> Protecting the constitutional and legal rights of both those accused of committing crimes and well as victims of crime

> Witness of injustice, a violation of procedural law, or a violation of someone's rights, they must take action and do what's right to rectify the situation

> The Commonwealth of Virginia has ignored these tenets of office

Best interest of justice

The respondent is schooled as an Enrolled Agent in navigating jurisprudence involving the United States Code therefore increasing access to due process

The United States District Court provides waivers reducing litigation costs therefore increasing access to due process

The United States District Court offers appointment of counsel in civil cases for qualifying parties affirmed on October 1 2018. The respondent requires counsel.

Federal procedure is more advantageous and efficient therefore increasing access to due process

The respondent will face extreme prejudice if current venue remains in the Alleghany County Circuit Court

## IX. DECLARATION

I do hereby consent to this action to remove case CL20-827 from the Alleghany

County Circuit Court in Alleghany County Virginia to the United States District

Court for the Western District of Virginia, Roanoke Division and retain

jurisdiction and further relief as is just and I certify that the foregoing is true and

correct on this the __10__ day of September 2021

Donnie T.A.M. Kern, Pro Se
Respondent
115 Church Street
Clifton Forge, Virginia 24422
quilltaxation@gmail.com
540-958-4958

## CERTIFICATE OF SERVICE

I certify that a true and exact copy of the foregoing along with exhibits and a
red/black jump drive was personally delivered to:

Honorable Debra N. Byer,
Alleghany County Circuit Court Clerk
PO Box 670
Courthouse
266 West Main Street
Covington, VA 24426-0670
dbyer@vacourts.gov

on this the __10__ day of September 2021

I certify that a true and exact copy of the foregoing along with exhibits and a red/black jump drive was mailed via the United States Postal Service, and in part via electronic mail to:

Attorneys for Petitioner

Patrick Jensen
Chief Dupty Commonwealth's Attorney
County of Montgomery
55 E. Main Street., Ste 2B
Christiansburg, Virginia 24073
jensenpr@montgomerycountyva.gov
540-382-5705

OR/

Jim H. Guynn, Jr.
Guynn, Waddell, Carroll & Lockaby, P.C.
415 S. College Avenue
Salem, Virginia 24153
jimg@guynnwaddell.com
540-387-2320

on this the _10_ day of September 2021

Donnie T.A.M. Kern, Pro Se
Respondent
115 Church Street
Clifton Forge, Virginia 24422
quilltaxation@gmail.com
540-958-4958

## EXHIBIT A

## ENCLOSURES

## CASE CL20-827-Alleghany County Circuit Court

True and correct copies of all process, pleadings and orders served in this action that were made known and in the possession of the respondent required under 28 U.S.C. §1446(a)